STATE, Appellant, v. HALLADAY, et al, Respondents

(5 N. W.2d 42.)

(File No. 8459. Opinion filed July 27, 1942.)

**Leo A. Temmey,** Atty. Gen., **Benj. D. Mintener,** Asst. Atty. Gen., and **Walter C. Miller,** State's Atty., of Plankinton, for Appellant.

**Fred D. Shandorf,** of Mitchell, and **Louis N. Crill,** of Sioux Falls, for Respondents.

HUGHES, Circuit Judge. In November, 1940, these defendants, Members of the Board of Charities and Corrections, and the Superintendent and his Assistant of the State Training School, were tried in the Aurora County Circuit Court,

Honorable R. C. Bakewell presiding, upon an information charging them under Section 30.9903 of the Code, with the crime of willfully and wrongfully placing Thelma Olson, a seventeen year old girl inmate of the school, in the hospital for the insane at Yankton, without having so done by the County Board of Insanity. The jury returned a verdict of not guilty as to the Superintendent and his Assistant, and a verdict of guilty against these defendants. Thereafter motions in arrest of judgment and also for a new trial were presented to the trial court who set same for hearing on the 21st day of December, 1940, and deferred the sentencing of the defendants until after such hearing. Subsequently, on the application of Judge Bakewell disqualifying himself, the presiding judge of this court appointed Honorable W. W. Knight, Judge of the Third Circuit Court, to preside at all further proceedings in place of Judge Bakewell. On the said 21st day of December at the courthouse in Aurora County, Judge Knight heard both of said motions together, took them under advisement, and thereafter on the 2nd day of January, 1941, filed in the office of the Clerk of said Aurora County Circuit Court his memo decision and also the judgment of said court acquitting these defendants of said crime. From this judgment the state has appealed.

The first alleged error in said judgment is the holding "That the information does not describe a public offense as against these defendants and the motion in arrest of judgment should be granted". In the view we take of this case such holding and the part of the judgment relating thereto will not be considered as our decision will be based entirely upon the second ground, "There being no evidence sufficient to charge these defendants with any offense and it further appearing that the motion for a directed verdict made at the close of all the evidence should have been granted and a Judgment of acquittal entered thereon as provided by Sec. 34.3650, and that such Judgment of acquittal should now be entered therefore etc." Prior to our present Code, Sec. 12, Chap. 208, Laws of 1923, was the penal provision of our law relating to the matter at issue herein and was a strictly mala prohibita enactment. Our

Code of 1939, Sec. 30.9903, repeals that former harsh enactment and provides in lieu thereof, "Any person who willfully and wrongfully places or attempts to place any person in a hospital for the insane by any method other than as prescribed in chapters 30.01, 30.02, or 30.03 of this title shall be guilty of a felony and upon conviction shall be punished accordingly". The information herein charges these defendants with willfully and wrongfully placing the girl, Thelma Olson, in the asylum without having her committed thereto by the County Board. The insertion of the phrase "willfully and wrongfully" altered the character of the old statute and these words cannot be disregarded. It is not now a malum prohibitum law. In criminal law the words willfully and wrongfully have a well-settled meaning and imply an intent to injure or harass or in some manner wrong the person so placed in the asylum. See Webster's Dictionary and Volume 45 of Words and Phrases, Perm. Ed., pp. 286, 632.

Mr. H. F. Fellows conducted the trial for the state's attorney and called the latter as the first witness, who testified in effect that on the 18th day of October, 1940, he was conducting a "John Doe proceeding relating to the affairs of the State Training School". That pursuant to subpoena Thelma Olson, escorted by a teacher of the school, appeared at said proceeding and testified therein and that he then allowed her to return to the school, that he had not finished questioning her, nor had she signed her testimony (but he does not testify that he informed either her or the teacher that her further presence would be required). That on the 25th day of October, desiring to question her further and learning she was at the Insane Hospital, he called Mr. Miller Steele and requested her return for further questioning. Mr. Steele accompanied by Miss Jensen, a teacher, immediately went to the asylum and brought back the said Thelma Olson, and on the morning of October 26th again sent her, accompanied by a teacher, to the office of said justice where she further testified at said hearing. It was further shown that at a meeting of the Board of Charities and Corrections at Sanator on October 19, 1940, the board passed Ex. B. as

follows: "Mr. Miller Steele, Superintendent of State Training School, was authorized to transfer Thelma Olson to the State Hospital for the Insane for observation and to be retained there until further advised concerning her case". Pursuant thereto the secretary of the board mailed Mr. Steele Ex. A. which is as follows:

"Sanator, South Dakota
"October 19, 1940

"Mr. Miller Steele, Sup't.
"State Training School
"Plankinton
"South Dakota

"Dear Mr. Steele:

"Authorization is hereby given you to transfer Thelma Olson, to the State Hospital for the Insane, Yankton, South Dakota for observation.

"You will please telephone the Superintendent of the State Hospital that Thelma Olson is being brought to said institution; that the Board desires this girl be held until further advised concerning this case.

"Yours very truly

"(Signed)    Grace Crill
"Secretary, State Board
Charities & Corrections"

The state's evidence then further showed that said Thelma Olson had not been taken before the County Board of Insanity or by it committed to the asylum. The state then rested, and defendants moved for a directed verdict which was denied. The defendants' attorney then called many witnesses including the officers, matron, teachers and employees of the school and submitted a mass of testimony showing that a short time previous to this girl's being taken to the hospital she had become depressed and moody at the school, avoided association with the other girls, constantly complained to the matron, her teachers and others of an impulse that lately had come to her of self-destruction; that she was very much afraid of this impulse and of being unable to resist it (such as climbing to top of the water tower

and jumping off). She begged them not to leave her alone and to do something for her (her record showed she had made two attempts at suicide before being committed to the school). All of her statements as to her fears and for protection and not to be left alone and to do something for her, made to these various people, were communicated by them at the time to Mr. Steele, who had also inquired into and investigated them. Mr. Steele took Mr. Halladay to Sanator on the morning of the 18th of October for a meeting of the board, and on the way communicated to him all that he knew or had learned from said witnesses concerning the disturbed mind and fears of this girl and requested Halladay to have the board send him authority to transfer her for observation to the hospital, as had been done in other similar cases. At the meeting of the board (Mr. Steele was not present) Mr. Halladay communicated to the other two members of the board all he had learned, concerning this girl, and pursuant thereto Ex. B. was passed and Ex. A. mailed to Mr. Steele. The evidence of the defense further showed that the defendants acted honestly and in good faith and for what they considered the best interests of the girl and in compliance with her many pleas for help and with no intent whatever to in any manner wrong or oppress her. That the transferring Thelma Olson to the hospital for observation was not an isolated instance of such action but had been done by the board in similar cases many times previously. The state in no manner attempted to rebut any of the defendants' evidence of honest intent, good faith and benefit to Thelma Olson, nor offer any evidence attempting to prove a wrong on the part of the defendants toward this girl in sending her to Yankton; on the contrary all through the trial and in its presentation of its case to this court the state has contended that Sec. 30.9903 of the Code was a malum prohibitum enactment and that the mere issuing Ex. A. to the Superintendent and the taking of the girl to Yankton thereby constituted the offense, and that no showing of good intent or benefit to her could lessen or change the crime and could only be received by the court in mitigation of the punishment of these defendants. Such interpretation of this

statute would render the words "willfully and wrongfully" therein meaningless. If counsel really believed such, why did they not eliminate this phrase from their information? The said statute is not a malum prohibitum enactment, and as we have herein pointed out the phrase "willfully and wrongfully" therein has a well-defined meaning and cast upon the state the burden of proof that the defendants sent this girl to the hospital for her injury and not for her benefit. The further contention of the state in its reply brief that the defendants sent this girl to the hospital to prevent her testifying at the John Doe is without any support in the evidence. Even if such had been shown to have been the purpose of the defendants, it would not have furnished the intent required by the statute and information unless it were also shown that the John Doe was for the interest and benefit of this girl, but there is no evidence showing that she was in anywise interested in said John Doe but on the contrary the evidence shows that her mind was very much distressed by having to appear and testify thereat; but the evidence clearly refutes any such contention. The girl had already testified at the John Doe and been excused before anything was done about sending her to the hospital, and when Mr. Steele was notified that her presence was further required he promptly produced her. The evidence fully shows that this unfortunate girl's mind was highly disturbed and her fear of the impulse of self-destruction very great; and that it was necessary for her immediate safety and proper care that the same be forthwith provided. Both the training school and the hospital were under the supervision of these defendants and apparently they availed themselves of the most efficient means at their disposal for the temporary care and protection of this girl as was their duty. Even if it be conceded that the law did not technically authorize their action as herein done, neither did it make their act a crime.

■■ We believe the finding of Judge Knight, that there was no evidence showing the defendants guilty of any offense, is justified by the record. It is urged that Judge Knight was without authority to enter the judgment of ac-

quittal. This disposition of the case was made upon a motion for a new trial. A motion for a directed verdict upon the grounds of insufficiency of the evidence had been made and overruled at the trial, and the propriety of this ruling was before Judge Knight on the motion for a new trial. SDC 34.3650 provides: "At any time after the evidence on either side is closed, the Court may, upon motion of the defendant, direct the jury to return a verdict of acquittal, and in the event of the failure of the jury to return such verdict of acquittal, the Court may refuse to receive any other verdict and may discharge the jury and enter a judgment of acquittal."

In view of this broad power given to the Circuit Judge, we are inclined to the view that on a motion for a new trial where a motion for a directed verdict is being reviewed it is within the contemplation of the statute and within the power of the trial judge, if he decides that error was committed in denying the motion for a directed verdict, to correct that error and dispose of the case in the manner contemplated by the statute, i.e., a "judgment of acquittal". Such construction of the statute we believe is confirmed by SDC 34.4109 which authorizes the Supreme Court to order that a judgment of acquittal be entered where the ruling of the court denying a motion for a directed verdict is assigned as error upon appeal. Surely it would seem that the statutes intend that the Circuit Court might correct its own error upon a motion for a new trial, where the question of whether error was committed is directly before that court, in the same manner it can be ordered to correct the error by this court after an appeal, and in the same manner that the court is now specifically by statute authorized to dispose of the case at the trial.

■■ In any event it being our opinion that the facts failed as a matter of law to establish the guilt of the defendants of the offense charged, and it appearing from the record that the facts have been fully developed and without material dispute, the state has not been prejudiced by the action of the court in entering a judgment of acquittal. For the same reason the state was not prejudiced by the action

of the presiding judge of this court appointing Judge Knight to preside when Judge Bakewell disqualified himself. While we think it clear that the presiding judge was acting within his authority, such decision is unnecessary in the absence of any prejudice resulting from this act.

The right of the state to appeal from this judgment of acquittal has not been questioned by respondents. The case has been argued and submitted on its merits. No question having been raised as to the right of the state to appeal, this question has not been considered by the court, and in view of the fact that the judgment of the trial court is affirmed this opinion should not be construed as deciding the question either directly or by inference.

The judgment of the trial court is affirmed.

HUGHES, PERRY, and WOHLHETER, Circuit Judges, sitting for ROBERTS, WARREN and SMITH, JJ., disquali-fied.

RUDOLPH, P.J., POLLEY, J., and WOHLHETER, Circuit Judge, concur.

PERRY, Circuit Judge, concurs in result.