(No. 53902.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RANDY VAN CLEVE *et al.,* Appellees.

*Opinion filed January 21, 1982.—Rehearing denied
March 25, 1982.*

·  Tyrone . C. Fahner, Attorney General, of Springfield, and Dennis P. Ryan, State's Attorney, of Waukegan (Melbourne A. Noel, Jr., Michael B. Weinstein, Jonathan Strauss, and Herbert Lee Caplan, Assistant Attorneys General, of Chicago, and Phyllis J. Perko, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

Mary Robinson, Deputy Defender, and Josette M.

Skelnik, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellees.

JUSTICE WARD delivered the opinion of the court:

Randy Van Cleve and Donald Fields were found guilty by a jury in the circuit court of Lake County of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3). The defendants moved to have the verdicts set aside because of insufficiency of the evidence. The court allowed the motions and entered a judgment of acquittal notwithstanding the verdicts. The appellate court dismissed an appeal of that judgment brought by the People. We granted the People's petition for leave to appeal to this court. 73 Ill. 2d R. 315.

This appeal presents three questions: (1) whether our procedural law authorized the trial court to enter a judgment of acquittal following a verdict of guilty; (2) whether the People can appeal from the judgment in view of our constitution's provision that "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal" (Ill. Const. 1970, art. VI, sec. 6); and (3) if an appeal lies, whether the trial court erred, considering the evidence, in entering the judgment.

The evidence presented a contest of credibility between the defendants and the prosecutrix. She testified that on the night of June 2, 1979, Van Cleve and Fields beat and raped her at the house of Lester Engleprite. She testified that she had gone to Engleprite's in search of a friend, Ed Shebonick. After the attacks, she walked to another friend's house over two miles away. She was aware that her own home and a police station were closer. It appears that the crime was not reported to the police until around noon on June 3.

Her testimony was corroborated in part by that of a physician, Dr. Charles Puig, who examined her on June 3. He testified that he found areas of discoloration and swelling, as well as abrasions on her body, including her face

and arms.

A search of Engleprite's house produced articles of clothing that she said were left there on the night of June 2. A laboratory analysis revealed blood on a torn shirt and bra found in the search. Other tests disclosed the presence of semen and spermatozoa on jeans she said she had worn after being raped, and in specimens taken during the physical examination of the prosecutrix by Dr. Puig on June 3.

Both defendants testified. They admitted to having intercourse with the prosecutrix, but said that she had consented to intercourse after an evening of drinking beer and smoking marijuana. Fields claimed that she had intercourse with him because he had implied that he would buy drugs for her.

The defense also presented Engleprite's next-door neighbor, who testified that she heard no screams, although she was home with the windows open at the time of the crime charged. Her testimony was offered to contradict testimony of the prosecutrix that she screamed when she was being attacked.

A Lake County detective testified that he had met the prosecutrix at the hospital on the day Dr. Puig examined the prosecutrix. He said he observed no bruises or contusions on her face. A nurse present during Dr. Puig's examination also offered testimony that she had not observed any bruises or marks.

At the close of all the evidence, the defendants moved for directed verdicts, which motions were denied. After the verdicts were returned, the defendants made motions for a new trial, claiming insufficiency of the People's evidence. Van Cleve's motion expressly asked for a judgment of acquittal. The trial court entered a judgment of acquittal notwithstanding the verdicts for both defendants. In entering judgment, the court disclaimed any intention of usurping the jury's function as the finders of fact. The court said

that the People had not introduced sufficient evidence to enable the jurors to find guilt beyond a reasonable doubt.

When the People filed a notice of appeal, the defendants moved to dismiss the appeal. They relied upon decisions of the appellate court which held that our constitution prohibits the appeal of judgments of acquittal notwithstanding the verdict (*People v. Wallerstedt* (1979), 77 Ill. App. 3d 677; *People v. Augitto* (1971), 1 Ill. App. 3d 78). The appellate court allowed the motion and dismissed the appeal.

We consider first whether the trial court had authority to enter the judgment of acquittal.

The Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 100—1 *et seq.*), unlike the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2)), does not provide expressly for a judgment notwithstanding the verdict. It does, however, state:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." (Ill. Rev. Stat. 1979, ch. 38, par. 115—4(k).)

An order of the judge directing a verdict is effective without the jury's assent (73 Ill. 2d R. 240), and the refusal to grant the motion when appropriate can be alleged as reversible error on appeal (*People v. Buxton* (1935), 362 Ill. 157, 161).

The Code provides for two types of motion at the post-trial stage: (1) the motion in arrest of judgment, applicable where the indictment, information or complaint does not charge an offense or where the court lacks jurisdiction (Ill. Rev. Stat. 1979, ch. 38, par. 116—2), and (2) the motion for a new trial, for which the statute does not specify grounds (Ill. Rev. Stat. 1979, ch. 38, par. 116—1).

The People contend that because the Code of Criminal

Procedure of 1963 does not provide expressly for a judgment of acquittal notwithstanding the verdict the trial court had no authority to enter that judgment. They correctly observe that the judgment notwithstanding the verdict was not available in criminal trials at common law. *Commonwealth v. Heller* (1942), 147 Pa. Super. 68, 24 A.2d 460; *State v. Russell* (Miss. 1978), 358 So. 2d 409, 412.

We consider, however, that the entering of the judgment by the trial court was not improper. It is true that the Code does not expressly speak of the judgment notwithstanding the verdict, but it does expressly provide for the directed verdict, which is a fairly recent development in criminal procedure. (See generally Comment, *Judgments of Acquittal: The Right to a Non-Jury Trial,* 24 U. Chi. L. Rev. 561 (1957).) In Illinois the motion for a directed verdict was recognized in the 1930's. (Compare *People v. Logan* (1934), 358 Ill. 64, and *People v. Bruner* (1931), 343 Ill. 146, with *People v. Zurek* (1917), 277 Ill. 621.) An order directing a verdict and a judgment notwithstanding the verdict are in substance the same, because they provide the same relief and are applicable on the same insufficiency-of-evidence ground. See *State v. Russell* (Miss. 1978), 358 So. 2d 409; *Pelletier v. Bilbiles* (1967), 154 Conn. 544, 227 A.2d 251; Ill. Rev. Stat. 1979, ch. 110, par. 68.1(2).

Because the rulings have a common ground, a judgment notwithstanding the verdict entered by a judge who theretofore denied a motion for a directed verdict is often regarded as a reconsideration of the order of denial (*e.g., Glowacki v. A. J. Bayless Markets, Inc.* (1953), 76 Ariz. 295, 303, 263 P.2d 799, 804), or as a reserved ruling upon the motion for a directed verdict (*e.g., Robinson v. Southern New England Telephone Co.* (1953), 140 Conn. 414, 101 A.2d 491).

We consider that a trial judge who has denied a motion for a directed verdict at the close of the evidence can enter a judgment of acquittal following a guilty verdict, if the judge concludes that the refusal to direct a verdict was

erroneous. The holding in *State v. Halladay* (1942), 68 S.D. 547, 5 N.W.2d 42, is applicable. There, as in this appeal, a statute authorized the direction of a verdict and the entering of a judgment of acquittal. In *Halladay* the defendants moved for directed verdicts at the close of the evidence, but the motions were denied. After verdicts of guilty were returned, the defendants filed motions for a new trial, which challenged the denial of their motions for directed verdicts. The court, in holding for the defendants, stated:

> "In view of this broad power given to the Circuit Judge [by the statute authorizing the direction of a verdict], we are inclined to the view that on a motion for a new trial where a motion for a directed verdict is being reviewed it is within the contemplation of the statute and within the power of the trial judge, if he decides that error was committed in denying the motion for a directed verdict, to correct that error and dispose of the case in the manner contemplated by the statute, i.e., a 'judgment of acquittal.'" 68 S.D. 547, 554, 5 N.W.2d 42, 45.

Similarly, in *State v. Russell* (Miss. 1978), 358 So. 2d 409, the court recognized the judgment notwithstanding the verdict, although no statute expressly authorized the judgment. The court stated that the motion for such a judgment is no more than a renewal of a motion for a directed verdict, which motion was authorized under the State's criminal procedure. 358 So. 2d 409, 412-13.

Recognition of the motion for judgment notwithstanding the verdict is consistent with the judicial principle that a court possesses inherent power to correct its interlocutory rulings. See *Roach v. Village of Winnetka* (1937), 366 Ill. 578, 581 (reconsideration of ruling on motion for judgment on pleadings was not improper, because a court may correct an erroneous ruling any time before final judgment); *Leon v. Kitchen Brothers Hotel Co.* (1938), 134 Neb. 137, 277 N.W. 823 (trial court that denied motion for directed verdict had authority subsequently to enter judgment not-

withstanding the verdict because it had the right to correct any of its orders made during term).

Next, we judge that the judgment of acquittal was not appealable. Our constitution provides:

"Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court in the Judicial District in which the Circuit Court is located except in cases appealable directly to the Supreme Court and *except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal.*" (Emphasis added.) Ill. Const. 1970, art. VI, sec. 6.

The People urge that the above provision should be interpreted to prohibit only those appeals that would be barred by the protections against double jeopardy in the Constitution of the United States (U.S. Const., amend. V), and the Constitution of Illinois (Ill. Const. 1970, art. I, sec. 10). They say that the proscription was intended to apply only to acquittals returned by juries and by judges after bench trials, as a reversal of those judgments would require retrial in violation of the protections against double jeopardy. The People submit that because Federal courts have held it is not a violation of the double jeopardy clause to allow an appeal from a judgment of acquittal notwithstanding a verdict of guilty (*United States v. Blasco* (7th Cir. 1978), 581 F.2d 681, 684, *cert. denied* (1978), 439 U.S. 966, 58 L. Ed. 2d 425, 99 S. Ct. 456; see *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013), it was error to dismiss their appeal.

We must observe that these Federal decisions are not relevant. They construe a Federal statute that permits the government to appeal in criminal cases except "where the double jeopardy clause of the United States Constitution prohibits further prosecution." (18 U.S.C. sec. 3731 (1976).) The question here is not whether allowing the People to appeal would violate the double jeopardy clause. The question is whether the provision of our constitution pro-

scribing appeal from judgments of acquittal was intended to confer rights and protections in a criminal proceeding beyond those provided by the double jeopardy clause.

The People acknowledge that it cannot cite any of the proceedings at the convention at which our constitution was drafted to support its contention. Nevertheless they contend that the background of the provision justifies their construction. Prior to the 1964 effective date of the judicial article of 1961 (Ill. Const. 1870, art. VI, sec. 7 (1964)), which included the constitutional provision we now consider, the People's right to appeal from final judgments in criminal cases was limited to cases where an indictment had been dismissed. (See generally Fins, *Analysis of Illinois Judicial Article of 1961 and Its Legislative and Judicial Implementation*, 11 DePaul L. Rev. 185, 230-33 (1962).) The Illinois State Bar Association and the Chicago Bar Association had jointly submitted a draft of a proposed judicial article to the legislature in 1961 (text contained in 49 Ill. B.J. 24, 33-50 (1960)). That draft, omitting any proscription against appeals from judgments of acquittal, provided: "In all cases, other than those appealable directly to the Supreme Court, appeals from final judgments of a Circuit Court lie as a matter of right to the Appellate Court in the district in which the Circuit Court is located." (*The Proposed Judicial Article*, sec. 8, 49 Ill. B.J. 24, 34 (1960).) The omission received some criticism on the ground that it endangered the protections against double jeopardy.

A judicial article proposed in 1957 had contained a provision that "after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal" (Proposed Judicial Article of 1957, sec.8, quoted in Fins, *Ten Objections to the Proposed Illinois Judicial Article of 1961*, 42 Chi. B. Rec. 261, 267 (1961)), and when the judicial article of 1961 was adopted this prohibition was made part of it. From this recital, the People conclude that we "must assume" that the constitutional provision under discussion

was intended to be no more than a protection against the danger of double jeopardy. We should therefore read it as proscribing only appeals requiring retrials after "judgments of acquittal rendered by the designated trier of fact," that is, retrials involving double jeopardy.

The ground for the People's argument is too speculative and frail to allow so restricted a construction of the constitutional provision.

The Constitution of Illinois contains a provision which specifically provides protection against double jeopardy (Ill. Const. 1970, art. I, sec. 10). It is reasonable to conclude that the Constitution's provision in article VI, section 6, was to provide rights and protections beyond those assured by the double jeopardy clause. We consider that the provision was intended to apply to the type of judgment of acquittal we have here, where there will not be a retrial of the defendant and therefore no involvement of the double jeopardy clause.

The statute authorizing a trial court to direct a verdict empowers the court to enter a "judgment of acquittal" upon the directed verdict. The People's argument acknowledges that a judgment entered upon a directed verdict is nonappealable because of the Constitution's proscription under article VI, section 6. There is no reason why a judgment entered by a trial court notwithstanding a verdict, which in effect is but a reconsideration of a motion for directed verdict, is other than a nonappealable judgment of acquittal. The appellate court correctly held that the judgment was not appealable.

As the dismissal of this appeal was proper, we do not reach the People's contention that considering the evidence the trial court should not have entered a judgment notwithstanding the verdicts.

The appellate court's judgment dismissing the appeal is affirmed.

*Judgment affirmed.*