NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190720-U

NO. 4-19-0720

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| CHAD E. SMITH, | ) | No. 18CF985 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brett N. Olmstead, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court did not err in denying defendant's motions for a directed verdict or his motion for acquittal notwithstanding the verdict.

¶ 2    On July 15, 2018, the State charged defendant by information with one count of aggravated driving under the influence of alcohol (blood alcohol concentration of 0.08 or more) (DUI), alleging he was involved in a motor vehicle accident that resulted in Michael Donahue's death and the violation was a proximate cause of his death (625 ILCS 5/11-501(d)(1)(F), 11-501(a)(1) (West 2018)). The State also charged defendant with one count of aggravated driving under the influence of alcohol, alleging defendant drove a motor vehicle while under the influence of alcohol, was involved in a motor vehicle accident that resulted in Donahue's death, and the violation was a proximate cause of Donahue's death (625 ILCS 5/11-501(d)(1)(F), 11-501(a)(2) (West 2018)). In July 2019, a jury found defendant guilty of both charges. In October 2019, the

trial court sentenced defendant to nine years in prison, credit for seven days previously served, and two years of mandatory supervised release (MSR). Defendant appeals, arguing the trial court erred in denying his motions for a directed verdict and in denying his motion for acquittal notwithstanding the verdict. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant's jury trial began on July 30, 2019. During its opening statement, the State noted:

> "You'll hear testimony that this case started out at the Fisher Fair last year. And at the Fisher Fair, you'll hear that the Defendant, along with Michael Donahue and Kathryn Isaac, she goes by Katie, all started out drinking at the Fisher Fair. Nothing wrong with that, they're all adults and they're allowed to. They then decided to drive home.
>
> Well, who drove home? The Defendant did. You'll hear from Ms. Isaac how that happened. She'll take the stand. You'll hear what she knows. He did that in his own car, from the Fisher Fair to her house. You'll hear Ms. Isaac say, 'The Defendant then drove away.' You'll hear her say she saw that.
>
> After that, there's going to be a gap in time. You'll hear a lot of people describe what happened, what they know, dates, times, locations. You're going to have a lot of that pointed out to you. But there's a gap of time where nobody knows what happened. In that gap of time, there was a wreck. The Defendant wrecked his car, and he had a passenger in the car, Michael Donahue. He's the victim in this case. And he's the victim because he died. He died as a result of that accident."

The State then told the jury how some of its witnesses would testify regarding what they saw and

what defendant told them, including statements he wrecked his car and he had been drinking. The State continued:

"Ladies and Gentleman, this is a trial where no single person knows everything that happened. You'll hear from multiple people talk about the things that they know. And it won't be one continuous story. That's because there was no plan among these people to become witnesses. There was no plan among these people to experience the sort of thing that they did, but they'll tell you what they know.

So I ask you, please keep an open mind and wait until you hear from everyone because the true story of what happened requires a lot of people to let you know what happened."

¶ 5 During defendant's opening statement, defendant's counsel noted:

"There is this enormous gap in time between midnight or so, when my client dropped her off, and I think the first report was 2:44 or 2:50 a.m. in the morning. So, you have this gap of over two hours, almost three hours where nobody knows what happened. We don't know where my client went. And the reason we don't know is my client has no memory. He was injured and has no memory of this.

* * *

So, the question becomes, obviously, who was driving at that time. It doesn't make any difference if my client owned the car or if at midnight he was driving because, obviously, Michael and Mr. Smith—Chad went somewhere else, did something else. I don't know what they did. I don't think anybody will know. But the most complete and total evidence is going to be the pictures as to what

happened because, again, there's really no doubt in terms of how this took place." Defense counsel then suggested the evidence would conclusively show defendant was not driving the car at the time of the accident.

¶ 6        Sergeant Christopher Darr testified he worked for the Champaign County Sheriff's Office. He was dispatched to a residence north of Mahomet after the resident called to say a person was at her residence who reportedly had been in a car accident and believed he had a broken arm. When Darr arrived at the residence, defendant was being treated by medical personnel. Darr heard defendant state he believed he had rolled his vehicle. Darr asked defendant if anyone else was in the vehicle. Defendant said, "No." Defendant stated he thought he had lost consciousness. At one point, defendant stated he could not believe he rolled his car. Darr smelled a moderate odor of alcohol on defendant.

¶ 7        After defendant was taken from the residence, Darr went to the scene of the accident. He was told a body was found underneath the vehicle. Darr testified a vehicle had left the roadway and grazed a telephone pole. He observed several unopened and still cold Bud Light cans by the car. Defendant's car was heavily damaged. The airbags in the vehicle did not deploy. The vehicle appeared to have been in a violent accident. Darr then saw Michael Donahue's body. Darr and Donahue had worked together at a lawn care service.

¶ 8        Katie Isaac testified she went with defendant and Donahue to the Fisher Fair on July 13, 2018. Defendant picked her up in his car. They spent about three hours at the fair. The three left the fair together in defendant's car with defendant driving. Katie saw a cooler of Bud Light in the car. She did not notice defendant driving erratically. Defendant did not appear to be under the influence of alcohol or anything else. After defendant dropped her off at her house around midnight, defendant drove away from her home with Donahue in the car. She did not know

- 4 -

what happened with defendant and Donahue after defendant drove away.

¶ 9        Brenda Lehmann testified she lived in rural Mahomet at the time of the accident. Defendant woke her up by pounding on her door around 2:00 or 2:30 a.m. on July 14. She talked to him through a kitchen window. Defendant said he wrecked his car, thought he broke his arm, and hurt his back. According to Brenda, defendant said he was the only person in the car. She called 911. An ambulance and the fire department arrived to treat defendant.

¶ 10        William Ward of the Mahomet Police Department testified he responded to the dispatch at 2:50 a.m. He started looking for the crash scene and found it. Defendant's car was in a soybean field. It appeared the vehicle had rolled over during the accident. He found Michael Donahue's head pinned underneath the rear driver's side wheel of defendant's vehicle.

¶ 11        Deputy Chad Beasley of the Champaign County Sheriff's Office testified he also responded to the accident scene and took measurements for purposes of reconstructing the accident. Based on his experience and observations, he believed defendant's vehicle went off the road, hit a utility pole, went airborne, and then rolled or flipped over several times. However, he testified he was not a certified accident reconstructionist.

¶ 12        Deputy Jonathan Reifsteck, a patrol officer for the Champaign County Sheriff's Office, testified he went to Carle Foundation Hospital to speak with defendant the night of the accident. He did not know if he was dealing with a DUI situation before he spoke with defendant. Defendant was lying on a hospital bed, covered in blankets, and was wearing a neck brace. Reifsteck questioned defendant concerning where he had been, his alcohol consumption, and who was with him. Defendant provided inconsistent answers as to what road he was traveling on, the direction he was going, where he was coming from, where he was going, who was in the car with him, and whether he remembered driving his vehicle. He testified he did not remember the

accident. He only remembered waking up in the field by himself. While at the hospital, defendant's eyes were bloodshot, glassy, and watery. His breath also smelled strongly of alcohol when he spoke. His speech was slurred. Reifsteck asked defendant to provide a blood sample, and defendant agreed. The State played a video of Reifsteck's interview with defendant recorded via Reifsteck's body camera.

¶ 13 Alexandra Baluka, a forensic scientist who specializes in toxicology at the Illinois State Police Division of Forensic Services, testified the blood alcohol content (BAC) of defendant's blood sample collected at 5:20 a.m. the morning of the accident was 0.118.

¶ 14 Fire Chief John Koller of the Cornbelt Fire Protection District in Mahomet testified the fire department was called out between 2:30 and 3 a.m. on July 14, 2018, and he was the first person on the scene. Defendant told Koller he had been in an accident but was not sure where it occurred. He said no one else was in the vehicle.

¶ 15 Christopher Humer, a paramedic for Carle Arrow Ambulance, also responded to the accident. Defendant told Humer he believed he had been in a car accident, was not sure where the accident occurred, and appeared confused. Defendant admitted he had been drinking. Defendant was only in a tank top, boxer shorts, and socks. He was not wearing pants or shoes.

¶ 16 The State then recalled Sergeant Darr. Darr testified he had been wearing a device capable of recording audio on the night of the accident which recorded defendant speaking with emergency services personnel. The audio was played for the jury.

¶ 17 After the State rested, defendant moved for a directed verdict. Defense counsel argued defendant's statements were the only evidence defendant was driving. Further, counsel argued the statements were unreliable because defendant was confused, disoriented, and provided inconsistent answers. Defendant also argued the evidence showed it would have been physically

impossible for defendant to have been driving the car. The trial court denied defendant's motion.

¶ 18 Defense counsel then introduced a few exhibits into evidence and rested. Defendant chose not to testify on his own behalf. Defense counsel again moved for a directed verdict, which the court denied.

¶ 19 During its deliberations, the jury indicated it was having a problem reaching a unanimous verdict. Seven of the jurors were voting to find defendant not guilty, and five jurors were voting to convict. With the agreement of counsel, the court instructed the jurors to continue their deliberations. After further deliberations, the jury found defendant guilty of both charges.

¶ 20 On August 28, 2019, defendant filed a posttrial motion, arguing the State's evidence was insufficient to sustain his guilt as a matter of law. Defendant argued the trial court should set aside the jury verdict and enter a judgment of acquittal notwithstanding the verdict. Alternatively, defendant asked for a new trial. On September 20, 2019, the trial court held a hearing and denied defendant's posttrial motions.

¶ 21 On October 11, 2019, the trial court sentenced defendant to nine years in prison with seven days of pretrial custody credit and two years of MSR.

¶ 22 This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 Defendant argues the trial court erred in denying his motions for a directed verdict at the end of the State's case and at the close of all evidence. He also argues the trial court erred in denying his motion for acquittal notwithstanding the verdict. Section 115-4(k) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4(k) (West 2018)) provides: "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or

direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." A motion for a directed verdict in a criminal trial tests the constitutional sufficiency of the evidence presented. *People v. Connolly*, 322 Ill. App. 3d 905, 915, 751 N.E.2d 1219, 1227 (2001).

¶ 25 "An order directing a verdict and a judgment notwithstanding the verdict are in substance the same, because they provide the same relief and are applicable on the same insufficiency-of-evidence ground." *People v. Van Cleve*, 89 Ill. 2d 298, 303, 432 N.E.2d 837, 839 (1982). "Because the rulings have a common ground, a judgment notwithstanding the verdict entered by a judge who theretofore denied a motion for a directed verdict is often regarded as a reconsideration of the order of denial [citation], or as a reserved ruling upon the motion for a directed verdict [citation]." *Van Cleve*, 89 Ill. 2d at 303, 432 N.E.2d at 839.

¶ 26 Determining whether evidence is constitutionally sufficient is entirely different from the trier of fact's ultimate verdict, which involves making credibility determinations and weighing the evidence presented. *Connolly*, 322 Ill. App. 3d at 915, 751 N.E.2d at 1227.

> " 'A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty.' [Citation.] In moving for a directed verdict, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion. [Citation.] The trial judge does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict. [Citation.] In other words, a motion for a directed verdict of not guilty asks whether the State's evidence *could support* a verdict of guilty beyond a reasonable doubt, not whether the evidence *does in fact support* that verdict. If the State's evidence

does not meet the minimum constitutional sufficiency stated in [*Jackson v. Virginia*, 443 U.S. 307 (1979)], there is no need for a finder of fact to consider that evidence." *Connolly*, 322 Ill. App. 3d at 915, 751 N.E.2d at 1227.

When reviewing the denial of a motion for a directed verdict, we apply a *de novo* standard of review. *Connolly*, 322 Ill. App. 3d at 918, 751 N.E.2d at 1229. We review the evidence presented in the light most favorable to the State and determine whether a reasonable trier of fact could fairly conclude defendant was guilty beyond a reasonable doubt. *Connolly*, 322 Ill. App. 3d at 918, 751 N.E.2d at 1229.

¶ 27    Defendant argues the State could not make a constitutionally sufficient case because it made a judicial admission during its opening statement that it did not know what happened at the time of the accident, thereby conceding it could not establish the elements of the charged offenses beyond a reasonable doubt. Defendant contends the State cannot pursue charges against defendant regarding the accident after admitting no one knows what happened at the time of the accident.

¶ 28    A judicial admission is a deliberate, clear, unequivocal statement by a party or its attorney about a concrete fact within the party's knowledge. *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 37, 131 N.E.3d 99. Whether a statement constitutes a judicial admission must be determined based on the circumstances of the case and the context in which the statement was made. *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 118, 125 N.E.3d 509.

¶ 29    Defendant points to the following statement made by the State during its opening statement: "[T]here's going to be a gap in time. You'll hear a lot of people describe what happened, what they know, dates, times, locations. You're going to have a lot of that pointed out

to you. But there's a gap of time where nobody knows what happened. In that gap of time, there was a wreck."

¶ 30 Based on the context in which this statement was made, the State was not making an admission it could not prove defendant's guilt beyond a reasonable doubt. Immediately following the alleged admission, the State told the jury: "*The Defendant wrecked his car, and he had a passenger in the car, Michael Donahue*. He's the victim in this case. And he's the victim because he died. He died as a result of the accident." (Emphasis added.) The State then told the jury it would hear Brenda Lehmann testify defendant showed up at her door in the middle of the night, injured, smelling of alcohol, and asking for help. The State also told the jury defendant told people at the scene he wrecked his car and had been drinking. As is evident from statements made immediately after the alleged admission, the State was only informing the jury it would not be able to put an eyewitness on the stand who could testify defendant was driving the vehicle at the time of the crash.

¶ 31 Defendant next argues statements he made after the accident—statements where he admitted driving the vehicle at the time of the accident—could not establish he was driving the vehicle because the State presented no independent evidence corroborating his statement. Defendant's argument is based on a false premise because the State presented sufficient independent evidence to corroborate his statements.

¶ 32 In *People v. Lara*, 2012 IL 112370, 983 N.E.2d 959, which defendant does not address in his brief to this court, our supreme court stated:

> "The *corpus delicti* of an offense is simply the commission of a crime. Along with the identity of the person who committed the offense, it is one of two propositions the State must prove beyond a reasonable doubt to obtain a valid conviction. In

general, the *corpus delicti* cannot be proven by a defendant's admission, confession, or out-of-court statement alone. When a defendant's confession is part of the *corpus delicti* proof, the State must also provide independent corroborating evidence." *Lara*, 2012 IL 112370, ¶ 17.

However, this independent evidence does not have to prove, by itself, defendant's commission of the offense. According to the court:

"To avoid running afoul of the *corpus delicti* rule, the independent evidence need only *tend to show* the commission of a crime. It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt. If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction." (Emphasis in original.) *Lara*, 2012 IL 112370, ¶ 18.

The court noted the independent evidence does not have to corroborate every element of the offense. *Lara*, 2012 IL 112370, ¶ 50. Further, "[t]he independent evidence need not precisely align with the details of the confession on each element of the charged offense, or indeed to any particular element of the charged offense." *Lara*, 2012 IL 112370, ¶ 51.

¶ 33        In this case, the State did not rely solely on defendant's statements to prove its case. The State presented the following independent evidence which corroborated defendant's statements he wrecked the car. Defendant showed up at Brenda Lehmann's home in rural Mahomet in the middle of the night asking for help because he had wrecked his car and was hurt. Defendant's vehicle was found nearby in a field and appeared to have been involved in an accident. Defendant's vehicle appeared to have left the road, hit a utility pole, and flipped or rolled over.

Mike Donahue was found dead in the field; his head underneath one of the vehicle's wheels. Defendant smelled of alcohol and his BAC was above 0.08. Katie Isaac testified defendant was driving his vehicle earlier that night around midnight.

¶ 34　　　　Defendant also argues the State did not offer any evidence how the accident occurred. This is incorrect. The State presented evidence defendant was driving the car while intoxicated, the car left the road, hit a utility pole, rolled over in the field, and Mike Donahue died as a result of the accident.

¶ 35　　　　As to defendant's argument the State presented no evidence regarding proximate cause, this issue was discussed extensively at the hearing on defendant's motion for acquittal notwithstanding the verdict. Defendant cites no authority and provides no explanation why the trial court's legal analysis was incorrect. This court is not a depository for an appellant to dump the burden of argument and research. *People v. Hood*, 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230 (1991). As a result, we find defendant forfeited his argument the State did not present sufficient evidence to establish proximate cause in this case pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 36　　　　Finally, defendant argues the State did not offer any evidence regarding how Donahue, while sitting in the passenger seat, could have been ejected from the vehicle and then have the vehicle land on him like it did. Defendant offers no analysis why the State was required to introduce evidence from an expert explaining how this could have occurred. Although the jury may not have been able to explain the physics involved in the accident, it had enough evidence to determine defendant was driving the vehicle at the time of the crash, defendant was intoxicated, Donahue was ejected from the vehicle during the crash, the vehicle landed on top of Donahue's head, and Donahue died as a result of the automobile accident.

¶ 37     Based on the evidence, the trial court did not err in denying defendant's motions for directed verdicts or his motion for acquittal notwithstanding the verdict. The State presented testimony defendant had been drinking at the Fisher Fair. Defendant drove Isaac home around midnight. When defendant left Isaac's home, defendant was driving his vehicle and Donahue was a passenger in the vehicle. Sometime between 2 a.m. and 2:50 a.m., defendant pounded on the door at Brenda Lehmann's residence in rural Mahomet. Defendant said he wrecked his car. He said his arm was broken and his back injured. Police, fire, and ambulance personnel responded to Lehmann's residence. Defendant smelled of alcohol. Other first responders heard defendant say he believed he had rolled his car. When asked whether anyone else had been in the vehicle, defendant said no. Defendant's vehicle was found in a field near Lehmann's home. The vehicle was heavily damaged and appeared to have been in a violent roll-over accident. The State introduced evidence a vehicle had left the roadway and grazed a telephone pole. Unopened Bud Light cans were found at the accident scene. Michael Donahue's body was found underneath defendant's vehicle. Defendant stipulated Donahue died as a result of the accident. As of 5:20 a.m. on the morning of the accident, defendant's BAC was greater than 0.08. This evidence was more than sufficient as a matter of law to support a finding or verdict of guilty.

¶ 38                               III. CONCLUSION

¶ 39     For the reasons stated, we affirm the trial court's judgment.

¶ 40     Affirmed.