THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PEDRO C. REY, Defendant-Appellee.

First District (4th Division)   No. 84—1404

Opinion filed September 19, 1985.

Richard M. Daley, State's Attorney, of Chicago (Linas J. Kelecius, Assistant State's Attorney, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Debra A. Zisook, Assistant Public Defender, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

After a jury trial, the defendant Pedro Rey was found guilty of two counts of armed robbery and two counts of unlawful restraint. Following a hearing on the defendant's motion for a new trial, the trial court indicated that after weighing the evidence it was not only granting the motion for a new trial but it was also entering a judgment notwithstanding the verdict in that the evidence did not prove guilt beyond a reasonable doubt. The trial court thereafter overturned the jury's verdict and found the defendant not guilty and discharged him. The State now appeals.

The defendant raises a preliminary issue with respect to the right of the State to appeal the instant case. The defendant contends that the State does not have a right to appeal from the judgment notwithstanding the verdict, because such a judgment is in effect an acquittal. The defendant argues that since the State is precluded from appealing an acquittal, then therefore this appeal should be dismissed. The State denies that the instant judgment was an acquittal under the State constitution because the judgment notwithstanding the verdict was based upon an improper evidentiary standard.

The facts and circumstances giving rise to this appeal stem from

an incident occurring on March 12, 1983. Chi Un Jun, a victim of the alleged armed robbery, testified that on March 12, 1983, he and his wife, Kum Yung Jun, both of Korean extraction, owned and were working in Yorky's Restaurant when a Hispanic man, identified by Chi to be the defendant, entered the restaurant. After taking the defendant's order and momentarily leaving the counter area, Chi returned to find the defendant behind the counter with a gun. Chi then testified that the defendant ordered him and his wife into the back of the restaurant, where he took $50 or $60 from Chi's wallet and then locked them in the bathroom. Chi then stated that from the bathroom he heard the cash register open. After Chi was able to unlock the bathroom door, he returned to the dining area to find $150 to $200 gone from the cash register as well as the security camera from the wall. He then called the police.

When the police arrived Chi gave then a description of the assailant. Chi described the man as a light-colored Hispanic, about 22 years old, 5 feet 8 inches tall weighing between 130 and 140 pounds. He also stated that the man had dark brown eyes, dark hair and a mustache. The identification of the defendant with regard to facial hair will be a critical factual issue in the instant case.

Chi further testified that on July 12, 1983, the defendant returned to his restaurant. At that time, Chi stated that he recognized the defendant as the man that had robbed him. He stated that the defendant paid for a soft drink and walked out of the restaurant quickly. Chi then followed him out and wrote down the defendant's license plate number and phoned the police.

On July 19, 1983, the police came to the restaurant to show Chi some photographs. Chi was able to identify one of the photographs as that of the defendant. Chi testified that the photograph of the defendant was different from the way the defendant looked on the day of the robbery, March 12, 1983, in that the defendant did not have a mustache in the photograph. On cross-examination, Chi stated that he did not tell the police on the day of the robbery that the assailant had a beard.

Kum Yung Jun testified through an interpreter. She identified the defendant in court as the man who robbed the restaurant on March 12, 1983, and who came to the restaurant again on July 12. She was not questioned about facial hair.

The defendant then testified in his own behalf. He stated that he went to a wake on March 12, 1983. However, on March 20, 1983, while being questioned regarding another investigation, the defendant did not mention being at a wake in response to a question as to where

he had been on March 12. On March 20, eight days after the instant robbery, the police took photographs of the defendant in connection with another investigation. The defendant testified that the photograph in which the defendant had a mustache and a goatee reflected how he appeared on March 12, the day of the robbery.

The defendant further testified that in the photographs taken of him on July 19 or 20, 1983, and then shown to Chi for purposes of identification, he had not shaved for three or four days. He also stated that at the present time he had last shaved seven days ago.

Anthony Mora, who knew the defendant and was in the restaurant on July 12, testified that the defendant entered the restaurant wearing a mustache that day. Milagos Montes, the defendant's girlfriend, testified that the defendant had a mustache and a beard on March 12 and that the photograph appeared to have been taken at the police station on July 19, the day before he was arrested. Detective Anthony Bongiorno testified that the photographs were true and accurate photographs of the defendant as he saw him on March 20, 1983.

Procedurally, the defendant moved for a directed verdict after the close of the State's evidence, after the close of the defendant's evidence, and again after jury instructions were given. These motions were all denied. During closing arguments, the defendant emphasized that the victims never mentioned facial hair on the assailant's chin, that the March 20 photograph obviously showed more than an eight-day growth of beard on the defendant's chin and that the defendant's present beard did not appear the same as in the photograph even though it was an eight-day beard according to the defendant's testimony. The State argued that the defendant grew, shaved and played with his facial hair to confuse his identity and emphasized "how much his hair had grown from just yesterday."

The jury found the defendant guilty of two counts of armed robbery and two counts of unlawful restraint. The defendant then made a motion for a new trial but made no motion for a judgment of acquittal notwithstanding the verdict. After arguments on the defendant's motion for a new trial, the defendant amended his motion to include, as a ground for a new trial, the allegation that the verdict was against the weight of the evidence because Chi's testimony indicated that he did not tell the police that the assailant had facial hair other than a mustache and because Chi testified that the assailant did not have a beard or facial hair on his chin.

The trial court then made the following observations and rulings. The trial court indicated that the date of the offense was March 12

and that on March 20, the Chicago police department took a photograph of the defendant which showed that he had a substantial beard. The court stated that it was hair that was very noticeable, especially against his light skin. The trial court further indicated that it did not know what the world's record for a man growing hair on his face was, but that the beard on the defendant as shown in the photograph taken on March 20 did not grow in eight days. Therefore, the court concluded that the defendant looked substantially the same on March 12, the day of the robbery as he did on March 20, the day the photograph was taken. The trial court also indicated that it seemed most unlikely that a person would notice and mention a mustache but either not notice a beard, or notice a beard and not mention a beard. The trial court therefore indicated that it seemed that the person who robbed the victim's restaurant had a mustache, but had not had a beard.

The trial court then explained the basis for its findings. It stated that while the weight of the jury verdict has been given great weight in our system, the trial court could not sit back and allow this verdict to stand. The court indicated that two things happened that perhaps misled the jury. One was the testimony of the defendant's girlfriend wherein she stated that the defense exhibit No. 1, the photograph of the defendant taken on March 20, 1983, was a picture of how the defendant looked on July 20, 1983. Also, the jury could have easily been misled by the scope of the testimony that moved into the areas of how the defendant looked at other times.

Finally, the trial court concluded:

"It seems to me, from this evidence that I have before me, and the difficulty in eyewitness identification that not only is a motion for a new trial in order, which I hereby grant, but I weighed the evidence in this case, because I have a doubt of the defendant's guilt, I'm entering a motion NOV; motion notwithstanding the verdict, overturning the verdict of the jury, finding the defendant not guilty and discharging him ***. Let me make one thing clear about my ruling and what I did. It was based on the weight of the evidence. I considered the evidence. I find it not to prove guilt beyond a reasonable doubt."

As was previously indicated, our initial consideration must be whether the State has a right to bring this appeal. The defendant argues that the instant appeal must be dismissed because the State is constitutionally precluded from appealing an acquittal (Ill. Const. 1970, art. VI, sec. 6) and the trial court by entering a judgment notwithstanding the verdict, effectively entered an acquittal.

■ Article VI of the Illinois Constitution, which provides generally that appeals from final judgments are a matter of right, further provides that "except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." (Ill. Const. 1970, art. VI, sec. 6.) A trial court can direct a verdict in favor of defendant and enter a judgment of acquittal when the evidence is insufficient to support a finding or verdict of guilty. (Ill. Rev. Stat. 1983, ch. 38, par. 115—4(k).) However, while the Code of Criminal Procedure does not expressly provide authority to a trial court to enter judgments notwithstanding the verdict, case law has interpreted a judgment notwithstanding the verdict to be in substance and effect the same as a directed verdict and thus within the province of the trial court. (See *People v. VanCleve* (1983), 89 Ill. 2d 298, 432 N.E.2d 837; *People v. Wallerstedt* (1979), 77 Ill. App. 3d 677, 396 N.E.2d 568.) Further, because a directed verdict is considered an acquittal and a judgment notwithstanding a verdict has been determined to have the same effect as a directed verdict, then a judgment notwithstanding the verdict must also be considered a nonappealable judgment of acquittal. *People v. VanCleve* (1983), 89 Ill. 2d 298, 307.

The State, however, asserts that the judgment entered by the trial court was not a judgment notwithstanding the verdict because the court made its determination based on the improper standard of weight of the evidence as opposed to the appropriate standard of the sufficiency of the evidence. Thus, the State contends that the trial court's judgment was a nullity regardless of whether it is an appealable order.

■ In its argument, the State raises the fine distinction between the standards weight of the evidence and sufficiency of the evidence. (See *Tibbs v. Florida* (1982), 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211.) The sufficiency standard is applied to motions for directed verdicts and judgments notwithstanding the verdict. These motions assert only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty. The making of it requires the trial court to consider only whether a reasonable mind can fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence most strongly in the People's favor. (See *People v. Withers* (1981), 87 Ill. 2d 224, 230, 429 N.E.2d 853.) The weight of the evidence standard is used for a motion for a new trial. There, the court must weigh the evidence and grant a new trial only if the verdict is contrary to the manifest weight of the evidence. A verdict is contrary to the manifest weight of the evidence only when the opposite conclusion is clearly apparent, for the finding appears to be unreasonable,

arbitrary and not based on the evidence. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.

■ In the instant case, there is some question as to whether the trial court applied the appropriate legal standard when entering the judgment notwithstanding the verdict. Nevertheless, the court specifically entered a judgment notwithstanding the verdict. The court's decision was based on its interpretation of the facts and its belief that they did not prove the defendant guilty beyond a reasonable doubt. As was previously discussed, a judgment notwithstanding the verdict is considered a judgment of acquittal and is thus a nonappealable judgment. (*People v. VanCleve* (1983), 89 Ill. 2d 298, 432 N.E.2d 837.) This is true regardless of whether the court's ruling is based upon a mistake of fact or mistake of law. (See *People v. Poe* (1984), 121 Ill. App. 3d 457, 459 N.E.2d 667; *In re L.R.* (1982), 106 Ill. App. 3d 244, 435 N.E.2d 908.) Therefore, the instant ruling, even if erroneous, is a judgment of acquittal, and the State is thereby precluded from appealing. Ill. Const. 1970, art. VI, sec. 6.

Accordingly, we grant the defendant's motion to dismiss this appeal. In light of this conclusion, further consideration of the State's other arguments would be inappropriate.

Appeal dismissed.

JOHNSON and LINN, JJ., concur.