THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT ROBINSON, Defendant-Appellant.

First District (1st Division)   No. 1—86—1899

Opinion filed December 4, 1989.—Rehearing denied June 28, 1990.

Randolph N. Stone, Public Defender, of Chicago (Bruce C. Landrum, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, Albert Robinson, was convicted of rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a)), aggravated kidnapping (Ill. Rev. Stat. 1983, ch. 38, par. 10—2(a)), unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3(a)), and deviate sexual assault (Ill. Rev. Stat. 1983, ch. 38, par. 11—3(a)). Following a jury trial, defendant was sentenced to concurrent prison terms of nine years, four years and nine years. On appeal, defendant contends that: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the prosecutors' comments during cross-examination and closing argument were improper and prejudicial, thereby denying him of his constitutional right to a fair trial; and (3) the trial court erred in denying his motion for judgment notwithstanding the verdict.

For the reasons set forth below, we affirm. The complainant testified that at about 3:30 p.m., on April 8, 1984, she was working at the Circle Hot Dog Stand on Maxwell Street when she first met the defendant, a person whom she had never seen before. He came into the hot dog stand and asked her if she had a sister attending a particular school. She responded that she did not, and the defendant left the hot dog stand. She soon left work, and while walking towards

Mike's Shoe Store to make a payment on shoes on layaway, she was again approached by defendant. He told her she was a nice looking young lady and inquired why she worked in a place like the Circle Hot Dog Stand. He told her he worked at the post office and could get her a good job. She went into the shoe store and paid on the shoes. Defendant followed her into the store.

When complainant left the store, defendant followed her out. He pulled out a knife, placed the knife at her right side and put his left arm around her shoulder. Defendant told complainant not to scream or he would kill her and that he was taking her somewhere else.

Defendant forced complainant to go with him on the eastbound bus on Roosevelt Road. She further stated that defendant grabbed the rear side door, held it open with the hand that had the knife in it and forced her onto the back of the bus with his other hand. During the ride, defendant kept his left arm around her and the knife, which was in his right hand, at her side. When the bus approached State Street, defendant pulled for her to get off; however, he kept close to her with the knife at her side as they departed the bus. They boarded and departed a second bus in the same manner. That bus proceeded in a southerly direction on State Street.

Complainant and defendant entered a housing project located at 29th and Dearborn Streets. She stated that it was at this time that she saw the knife as defendant closed it and placed it in his jacket pocket. She described it as brown and wooden with a five-inch blade and gold at the top and the bottom. Next, defendant pulled her into one of the buildings and took her to apartment 504 where a man, later identified as Curtis Hughes, opened the door. Defendant took her into the bedroom, sat her on the bed, and called her derogatory names, including a prostitute. Defendant repeatedly told complainant to take off her clothes; and when she refused, he slapped her in the face several times and threatened her. She then took off her clothes. Defendant laid her on the bed and engaged in oral sex and intercourse with her. She stated that she remained stiff, crying and shaking the entire time.

The complainant further testified that Curtis Hughes came into the room and spoke about assaulting her; however, after she cried and begged him to let her go, he left the room. After she dressed, defendant took her into the bathroom, where he took her pants down and washed her vagina with soap and water. Defendant took her to the bus stop at 29th and State Streets and told her not to tell anyone what had happened.

Upon arriving home, the complainant went directly to her bed-

room but later took a bath. At approximately 12:30 a.m., she called her boyfriend, Patrick, and told him something bad had happened and asked him to come over to her house. When Patrick arrived, she told him she had been snatched off the street and raped. He then told her mother and sister, who called the police. She gave a statement to the female officer who came to the house. The officer then took her to Billings Hospital for an examination. After the examination, complainant spoke to two detectives who later accompanied her to the building at 2910 South Dearborn. While they were on the fifth floor, Curtis Hughes walked out of the apartment. The complainant identified him to the detectives, who then took Curtis into custody.

Chicago police officer Renee Daniels testified that on April 9, 1984, she and her partner were assigned to a rape case. At approximately 2 a.m., they responded to the call. They were met at the door by the complainant's mother, who said her daughter had been raped. At first, complainant, very upset and crying, was unable to talk while Officer Daniels' male partner was present; however, she was able to speak to Officer Daniels when they were alone. She told Officer Daniels what had happened and that she had been raped.

Patrick, complainant's boyfriend, testified that on April 9, 1984, just after midnight, he got a call from complainant, who asked him to come over to her house. When he arrived she was crying and very upset. She told him she had been abducted and raped in the projects.

Following Patrick's testimony, the parties stipulated that if Dr. Keene were called to testify, he would state that he examined the complainant in the early hours of April 9, 1984. This examination included a vaginal smear which he placed on a slide and gave to the Chicago police department.

Next, Jean Doliak, a microanalyst in the Chicago police department crime laboratory, testified that she analyzed the vaginal smear and concluded that the slide contained human spermatoza.

Detective Steven Barnas testified that he first interviewed complainant at the hospital on April 9, 1984. Later Detective Barnas, his partner and complainant went to the housing project at 2910 South Dearborn, where Curtis Hughes was taken into custody. Soon thereafter, the detectives approached defendant at work at the snack shop, where they found a knife in his jacket. Defendant was placed in custody; and while in custody, he gave a statement to the detectives that he had picked up a girl and had taken her to a friend's apartment. The girl wanted some cocaine so she offered him sex for $100; however, after defendant and the girl had sex, she told him to forget about the money. On cross-examination, Detective Barnas acknowl-

edged that defendant had also stated that he used the knife at work to open boxes.

Later that same day, the complainant identified defendant in a lineup and also identified the knife as being exactly like the one used by her assailant.

Curtis Hughes testified on defendant's behalf. He stated that defendant often stayed in his apartment and came there on April 8, 1984, between 3:30 p.m. and 4:30 p.m. with complainant. He let them into his apartment, took complainant's coat and asked her to sit down. The three of them proceeded to laugh, joke and talk and sit around for awhile watching television. Curtis left the apartment to meet a friend at the bus stop and returned with a girl about 30 to 40 minutes later. When he returned, the complainant and defendant were in the bedroom. Later, she came out of the bedroom and went into the bathroom alone. She then joined him and inquired if he had any money "to turn a date." Then defendant joined Curtis, who was drinking beer, and the complainant, and the defendant proceeded to drink beer and smoke reefer. She never stated that she had been abducted. Curtis also testified that defendant left the apartment for a few minutes. However, on cross-examination, Curtis conceded that in his prior statements he never stated the complainant had asked him for a date or that anyone had left the apartment that night.

The defendant's account of what occurred was very similar to the complainant's version; however, his testimony differed in certain respects as follows. Defendant testified that on April 8, 1984, while waiting for a bus at approximately 3:30 p.m. at the Circle Hot Dog Stand, he and the complainant had a conversation. He then waited and left the stand with her when she got off work. They went to a shoe store together, and after she transacted her business, they left the store together and walked to Roosevelt Road to catch the bus. Defendant testified it was at this time that he told her they were going to 2910 South Dearborn. They boarded the bus by the front door, defendant paid her fare, and they sat together on the bus. They rode to State Street, where they boarded a second bus at the front door but this time they were unable to sit together. When defendant and complainant entered Curtis Hughes' apartment, she decided she wanted to have sex with defendant. Then, she took her clothes off and lay on the bed. They engaged in sexual intercourse, but defendant did not ejaculate. Defendant stated that he did not force her to have sex with him, nor did he place his mouth on her, slap or threaten her or put a knife to her at any time. At some point during the time she was in the apartment, defendant left to get some cocaine and meet

another young lady.

A jury found defendant guilty of rape, aggravated kidnapping, deviate sexual assault and unlawful restraint. The court denied defendant's motions for a new trial and for a judgment notwithstanding the verdict.

■■ ■ We initially consider defendant's contention that the evidence was insufficient to prove that he was guilty beyond a reasonable doubt. To sustain a conviction for the charges of kidnapping and unlawful restraint, the State must prove that the complainant was either abducted or secretly confined against her will or unlawfully detained by the defendant. (Ill. Rev. Stat. 1983, ch. 38, pars. 10—1, 10—3.) The State, in rape cases, is required to prove beyond a reasonable doubt that the act was committed by force and against the will of the complainant. Ill. Rev. Stat. 1983, ch. 38, par. 11—1; *People v. Thomas* (1981), 96 Ill. App. 3d 443, 421 N.E.2d 357; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251.

The degree of force executed by an assailant and amount of resistance by a rape victim depends upon the facts of the particular case. (*People v. Edmond* (1979), 76 Ill. App. 3d 540, 395 N.E.2d 106.) The determination of force or lack thereof (and consent or lack thereof) is ultimately a matter of credibility and is therefore a question best left to the trier of fact (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667); and in a criminal jury trial, this determination is exclusively within the province of the jury. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267; *People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331; *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

Defendant does not deny that he and the complainant had sexual intercourse; however, he asserts that his testimony that she voluntarily went with him to the housing project and engaged in sex is more credible. Defendant argues that this court must reverse his convictions because complainant's testimony that she was forced to engage in sex with him is: (1) uncorroborated by other testimony and evidence, and (2) is so improbable, unconvincing, and unsatisfactory that it raises a reasonable doubt as to whether the acts were performed by force and against her will.

■ We disagree. As noted earlier, if there is a question of credibility or a conflict in the evidence, it is the function of the trier of fact to evaluate the credibility of the witnesses and to weigh the evidence and resolve any apparent conflicts therein (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733; *People v. Nally* (1985), 134 Ill. App. 3d 865, 480 N.E.2d 1373), and the reviewing court has neither

the duty nor the privilege to substitute its judgment for that of the trier of fact. *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182.

In the present case, a jury listened to the testimony of all the witnesses, including the testimony of the defendant and the complainant, evaluated the witnesses' credibility, reviewed and weighed this and the other evidence and then found the defendant guilty. A determination of the credibility of the witnesses and the sufficiency of the evidence will not be reversed upon review unless the evidence was so improbable as to create a reasonable doubt of guilt. (*People v. Hall* (1986), 114 Ill. 2d 376, 499 N.E.2d 1335.) The standard of review by which we are governed is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Moreover, contrary to defendant's argument, it is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evidence of his guilt. *People v. Jimerson* (1989), 127 Ill. 2d 12, 43.

In view of these principles, we here conclude there is sufficient evidence to support the jury's verdict. The knife was found in defendant's jacket pocket at his job the day after the incident. The complainant later identified the knife as being exactly like the one her assailant held to her and used to threaten her. She testified that defendant held the knife to her and only put it away once they reached the housing complex. The housing project was an area with which defendant was completely familiar and where at least two people spoke to him by a nickname. Defendant instructed the complainant not to scream and informed her that no one would help her in his territory. Once inside the apartment, defendant again threatened her, called her derogatory names and slapped her in the face several times when she refused to remove her clothes. Under these circumstances, it would have been foolhardy for her to make an outcry. We believe she demonstrated such resistance that the acts performed upon her were against her will. The law does not require that a victim endanger her life or act in a foolhardy manner. She knew that the defendant still had a large knife which could be retrieved and used against her at any time. Rape can be established by the threat of force which coerces a female to engage in sexual intercourse, as well as by the actual use of force. *Burgin*, 74 Ill. App. 3d 58, 392 N.E.2d 251. See also *People v. Watts* (1985), 139 Ill. App. 3d 837, 487 N.E.2d 1077; *People*

*v. McMullen* (1980), 91 Ill. App. 3d 184, 414 N.E.2d 214.

Additionally, there are several points of independent corroboration of the complainant's testimony by other State witnesses. She timely reported the incident to the police. Her hospital examination revealed the presence of spermatoza in the vaginal smear. Both the defendant's and Curtis Hughes' testimony substantially corroborated her account of what happened, while their own testimony either conflicted with prior statements or with each other's trial testimony.

Defendant, in reliance on *People v. Rossililli* (1962), 24 Ill. 2d 341, 181 N.E.2d 114, and *People v. Wright* (1986), 147 Ill. App. 3d 302, 497 N.E.2d 1261, contends that the complainant's testimony—the only evidence against him—was so incredible, this court must reverse his conviction based upon that testimony. Defendant argues that she never cried out to anyone, attempted to escape or asked for help. Thus, he postulates that her testimony is not clear and convincing. Conversely, defendant maintains that his account of what occurred, that she voluntarily accompanied him to go to the housing project, that she requested drugs and consented to engage in sex, is clear and convincing. However, our review of the cases relied upon by defendant reveals that in order to sustain a criminal conviction, the testimony of the complaining witness must be clear and convincing *or* corroborated by other facts and circumstances.

Thus, the testimony of one witness, if positive and credible, is sufficient to convict in a criminal prosecution (*Novotny*, 41 Ill. 2d 401, 244 N.E.2d 182), and the testimony of the victim alone, if clear and convincing, is sufficient to support a conviction for rape (see *People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367; see also *People v. Fosdick* (1988), 166 Ill. App. 3d 491, 519 N.E.2d 1102; *People v. Luigs* (1981), 96 Ill. App. 3d 700, 421 N.E.2d 611), even where the testimony is contradicted by the accused (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 681, 424 N.E.2d 688). Clear and convincing does not mean that testimony must be uncontradicted or even unimpeached; for instance, variances in testimony may demonstrate no more than minor discrepancies which go to credibility. (See, *e.g.*, *Glover*, 49 Ill. 2d 78, 273 N.E.2d 367.) Hence, we believe that the complainant's testimony was clear and convincing *and* corroborated by other facts in evidence, and based upon this testimony, the trier of fact properly rejected defendant's account of the incident.

Consequently, we here conclude that the evidence, which was weighed by the trier of fact, when viewed in a light more favorable to the prosecution, was sufficient to sustain the defendant's convictions for rape and aggravated kidnapping. We decline to substitute our

judgment for that of the trier of fact. (See *People v. Laughlin* (1987), 163 Ill. App. 3d 115, 516 N.E.2d 535.) The jury was in the best position to consider the testimony of the complainant and that of the defense witnesses to determine the credibility of the witnesses, the weight to be given to their testimony based on the evidence presented, and to observe the witnesses' demeanor. The jury is not mandated to reject complainant's testimony and accept the defendant's version, nor does conflicting testimony of complainant and the defendant, or corroboration of the defendant's testimony, require a reversal where the State presents evidence sufficient to convict. *People v. Dixon* (1976), 39 Ill. App. 3d 132, 136, 350 N.E.2d 193.

Next, defendant contends that the prosecutors' comments during cross-examination and in closing argument substantially prejudiced his constitutional right to a fair trial. First, defendant asserts that the prosecution's questions on cross-examination were improper and served only to arouse the antagonism of the jury. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) The complained-of comments here concern the prosecutor's questions on cross-examination to the defendant inquiring about his use of a Bible.

"MR. McNERNEY [Assistant State's Attorney]: I notice, sir, you have brought a Bible in here with you this afternoon. You took it to the stand with you, correct.

DEFENDANT: I didn't hear you.

Q. You took the Bible with you to the stand?

A. I take my Bible with me everywhere I go.

Q. Did you take it in the room when you had sex with [complainant]?

A. I wasn't reading my Bible—.

MR. SOSMAN [Defense attorney]: Objection.

MR. McNERNEY: Did you take it with you when you went to buy cocaine?

MR. SOSMAN: Objection.

THE COURT: Sustained.

MR. McNERNEY: You live by the book.

DEFENDANT: I am not trying to be phony. When it comes to God, I don't play games.

Q. You live by that book?

A. I practice it.

Q. Nobody told you to bring that book in here and that it might help you to beat this case, did they?

MR. SOSMAN: Objection.

THE COURT: Objection sustained. The jury is instructed to

disregard that inference."

Defendant specifically contends that this line of questioning was initiated for only two possible purposes—to accuse defense counsel of fraud and trickery, or to ridicule the defendant—and, therefore, the questions were asked solely to arouse the antagonism of the jury. Defendant maintains that this type of prosecutorial behavior is improper, prejudicial and warrants the granting of a new trial. *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317.

It is well established that the latitude to be allowed on cross-examination is a matter within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision unless there is a showing of a clear abuse of that discretion that results in manifest or substantial prejudice to the defendant. See *Collins*, 106 Ill. 2d at 269. See also *People v. Wright* (1986), 111 Ill. 2d 128, 149.

The State, during oral argument, asserted that its comments on cross-examination inquiring as to the reasons why the defendant brought a Bible into the courtroom were in response to invited remarks by the defendant. We find nothing in the record which supports this contention. The record reflects that the defendant brought the Bible to court with him and took it on the stand with him when he testified. However, any significance to be attached to this occurrence escapes our reasoning. Further, the fact that defendant carried a Bible during the trial contains little or no probative value.

▇▇ ▇ While we agree the comments are improper, we believe that they constitute no more than harmless error, not necessitating a reversal, where as here, they did not unduly influence the jury or result in substantial prejudice to the defendant. (*People v. Tiller* (1982), 94 Ill. 2d 303, 321, 447 N.E.2d 174; *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 369 N.E.2d 1200.) In reaching our determination that the remarks did not result in substantial prejudice to the defendant, we considered: (1) the context of the language used; (2) its relationship to the evidence; and (3) its effect on the defendant's right to a fair and impartial trial. *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301.

We conclude that the State's questions concerning the defendant's use of the Bible during the trial appeared to be no more than an afterthought inquiry why the defendant brought it to trial, had no relationship to any of the other evidence presented during the trial, and in no way constituted a material factor in defendant's conviction, without which the jury might have reached a different result. (*People v. Lyles* (1985), 106 Ill. 2d 373, 391, 478 N.E.2d 291; *People v. Lasley* (1987), 158 Ill. App. 3d 614, 511 N.E.2d 661.) The court sustained de-

fense counsel's objections and instructed the jury "to disregard that inference." Further, the trial court instructed the jury to disregard all questions which were withdrawn or to which objections were sustained. Accord *People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125.

Second, defendant maintains that comments by the prosecution during closing and rebuttal arguments were improper and thus mandate a reversal of his convictions. The remarks referred to are: (1) the jury should find the defendant guilty "for the women of the city"; (2) the sacrifice made by "society's rape victims"; (3) if the jury acquitted the defendant, he would believe, "[T]here's [*sic*] plenty of 17-year-old girls out there. Have yourself a ball"; and (4) on three separate occasions, references to the defendant as a "slick, modern-day Casanova." Defendant contends that these remarks had no probative value, were not supported by the evidence and were made solely to inflame the passion of the jury. *People v. Lee* (1984), 128 Ill. App. 3d 774, 471 N.E.2d 567; *People v. Frazier* (1982), 107 Ill. App. 3d 1096, 438 N.E.2d 623.

Initially, we point out that of the three instances referred to regarding the remarks "slick" or "modern-day Casanova," there was only one instance in which defense counsel objected to the remarks at trial. Since no objection was raised at trial, any alleged error concerning the first two instances is waived. *Lyles*, 106 Ill. 2d at 392.

As is the case with cross-examination, a prosecutor is allowed a great deal of latitude during his closing and rebuttal arguments, and a trial court is given great latitude in determining the propriety of a closing argument. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 149, 446 N.E.2d 1229.) A conviction will not be disturbed on review unless: (1) the remarks constitute a material factor in the conviction *or* (2) the remarks resulted in substantial prejudice to the defendant, *i.e.,* the jury would have reached a contrary verdict had the improper remarks not been made. *People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68, citing *People v. Franklin* (1976), 42 Ill. App. 3d 408, 415, 355 N.E.2d 634.

In *People v. Bracy* (1986), 152 Ill. App. 3d 566, 576-77, 504 N.E.2d 764, the court referred to a two-part analysis to determine whether or not a trial court had abused its discretion. First, the reviewing court is required to look at the remarks in light of the record as a whole and the argument in its entirety. Second, the court must then determine whether the remarks were a material factor in the conviction.

In the case at bar, as earlier noted, the testimony of the com-

plainant was clear and convincing and corroborated by other facts and circumstances, including the physical evidence of the knife found in defendant's jacket at the time of his arrest. Further, during his examination, the defendant had an excuse for every factor which pointed towards any element of guilt. Defendant stated that he was in the area to take care of some business, the knife was used for work, he initially approached complainant because she looked like "her sister who went to a school," and he needed her telephone number for a job application. Although defendant waived his right of review to the repeated remarks "slick, modern-day Casanova," nonetheless, we believe they fall within legitimate recognized boundaries and in no way prejudiced the defendant's right to a fair trial or affected the jury's deliberations. (See *Lasley*, 158 Ill. App. 3d at 633.) Under these circumstances, it was not unreasonable for the prosecutor to comment how the defendant intended to "slide" out of this one.

Nor do we believe improper the statements regarding rape victims and 17-year-old girls, where the defendant here was charged with the crimes of rape and deviate sexual assault, crimes he was accused of perpetrating upon a young woman, 17 years old at the time of the incident. A prosecutor can argue any logical inference that can be drawn from the evidence. (*People v. Higgins* (1972), 50 Ill. 2d 221, 228, 278 N.E.2d 68.) The defendant admitted visiting Curtis Hughes' apartment often, a fact also corroborated by Curtis' testimony. In light of the record as a whole, and the entire argument of the State, predominantly based upon the evidence presented and inferences to be drawn therefrom, we do not believe that absent the remarks, a contrary verdict might have been reached. We conclude that the prosecutor's statements made during closing argument were proper (see *Lasley*, 158 Ill. App. 3d at 625; *Bracy*, 152 Ill. App. 3d at 575), or at the very least, constituted harmless error, and that the trial court did not abuse its discretion.

The record demonstrates that defense counsel objected to the remarks and the court either sustained the objection or the prosecutor moved on to another subject. Further, the court admonished the jury that neither opening statements nor closing arguments were evidence and that any statement or argument made by the attorneys which was not based on evidence should be disregarded. Thus, any potential prejudice or alleged impropriety was cured when defense counsel's objections were promptly sustained (*Perez*, 113 Ill. App. 3d at 149), and the court properly admonished and instructed the jury. *Baptist*, 76 Ill. 2d 19, 369 N.E.2d 1200.

Next, defendant maintains that his right to a fair trial was vio-

lated where the trial court improperly considered his motion for judgment notwithstanding the verdict. Defendant contends that remarks made by the trial judge during the hearing on defendant's motions for a new trial, or in the alternative, for a judgment notwithstanding the verdict, indicate the judge did not use the proper "sufficiency of evidence" standard of review which is applied to both motions for directed verdict and judgment notwithstanding the verdict. (*People v. Rey* (1985), 136 Ill. App. 3d 645, 483 N.E.2d 982.) The remarks referred to are the trial judge's comments that "[t]welve jurors found this man guilty of rape. I am not going to set it aside. Well, you had an alternative you didn't exercise the alternative, of waiving the jury, so in my opinion, I have to accept the jury's finding."

The State responds that a motion for judgment notwithstanding the verdict was not available to defendant because he failed to make a motion for directed verdict at the end of the State's case or at the close of all of the evidence. Thus, the State argues that the trial court had no authority to consider defendant's motion for judgment notwithstanding the judgment; however, the court did consider the motion and that consideration was correct.

Neither the directed verdict nor the judgment notwithstanding the verdict was available at common law in criminal trials. (*People v. Van Cleve* (1982), 89 Ill. 2d 298, 303, 432 N.E.2d 837.) In Illinois, the motion for directed verdict was recognized in the 1930's. (*Van Cleve*, 89 Ill. 2d 298, 432 N.E.2d 837.) Today, the Code of Criminal Procedure expressly provides for the directed verdict in criminal proceedings. (Ill. Rev. Stat. 1983, ch. 38, par. 115—4(k).) Pursuant to this provision of the Code, a trial court can enter a judgment of acquittal when the evidence is insufficient to support a guilty finding. Although this provision does not expressly provide that a trial court has the authority to enter a judgment notwithstanding the verdict, case law has interpreted the judgment notwithstanding the verdict to be in substance and effect the same as a directed verdict and thus within the province of the trial court. *Van Cleve*, 89 Ill. 2d at 303; *Rey*, 136 Ill. App. 3d at 650.

In *People v. Van Cleve*, at the close of all the evidence, the defendants moved for directed verdicts, which the judge denied. After the verdicts were returned, defendant Van Cleve requested a judgment of acquittal in his motion for a new trial. The trial court entered a judgment of acquittal notwithstanding the verdicts for both defendants. Our supreme court sanctioned the entry of a judgment of acquittal by the trial judge on the grounds that it was proper for the judge to enter the judgment of acquittal notwithstanding the verdict if the

judge concluded that his earlier decision denying the directed verdict was erroneous.

We agree that the *People v. Van Cleve* court's analysis rests in part on the well-established principle that a trial court has inherent power to correct its interlocutory rulings. The State argues that *People v. Van Cleve* entitles a defendant to a judgment notwithstanding the verdict following a guilty verdict *only* where the trial court has previously denied the defendant's motion for a directed verdict during trial. Although we have found no cases since *People v. Van Cleve* and *People v. Rey* which are dispositive of the issue, our analysis, however, does not result in such a restrictive reading of *People v. Van Cleve.*

While ordinarily a defendant should know at the conclusion of the State's evidence, or at the close of all the evidence, whether as a matter of law the evidence is insufficient to support a finding of guilty, there may be some circumstances where matters were not called to the court's attention until after the verdict is returned, where a judgment of acquittal notwithstanding the verdict is proper even in the absence of a previous court denial of a motion for directed verdict. It is our view that the trial court maintains its inherent authority to correct previous erroneous rulings. Accord *Van Cleve*, 89 Ill. 2d 298, 432 N.E.2d 837.

■■■ A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty. (*People v. Withers* (1981), 87 Ill. 2d 224, 230, 429 N.E.2d 853.) The trial court considers only whether a reasonable mind can fairly conclude the guilt of the accused beyond a reasonable doubt, viewing the evidence most strongly in the State's favor. By parallel, a motion for judgment notwithstanding the verdict should be granted in instances only where the State's evidence, when viewed in a light most favorable to the State, is insufficient to support a finding or verdict of guilty. See *People v. Easter* (1981), 102 Ill. App. 3d 974, 981, 430 N.E.2d 612.

In *People v. Withers* the supreme court found that the trial judge's summary ruling on the defendant's motion for directed verdict was not an abuse of discretion nor was it arbitrary. By comparison, the State's evidence in the case at bar was presented in a short trial where the charges were uncomplicated. Defendant maintains that the judge's remarks alone indicate he used the wrong standard of review. However, we believe the remarks referred to were cited by defendant out of context.

■■ Our review of the record reveals that during the sentencing

hearing on June 16, 1986, defendant presented argument on his motion for a new trial, or in the alternative, motion for judgment notwithstanding the verdict. The court denied both motions, commenting "[t]welve jurors found this man guilty of rape. I am not going to set it aside." Then, the hearing was continued until July 7, 1986. At this time, defense counsel again attempted to present evidence of defendant's innocence. Counsel remarked that 85% of the juries find defendants guilty when they are charged with rape. It was in response to this and similar remarks that the trial judge remarked, "[w]ell you had an alternative." Hence, we believe that these remarks made by the trial judge during the sentencing hearing referred solely to the defendant's decision to be tried by a jury and in no way represented the judge's opinion or affected his ability to apply the correct standard in ruling on the motion for judgment notwithstanding the verdict.

Accordingly, in the absence in the record of any facts to the contrary, we believe that the trial court properly denied the defendant's motions for a new trial, based on the weight of the evidence, and also properly denied the defendant's motion for judgment notwithstanding the verdict, based on the sufficiency of the evidence standard. Accord *Rey*, 136 Ill. App. 3d at 650-51.

For the reasons above stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.