**2016 IL 118845**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 118845)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
FRED CLARK, Appellee.


*Opinion filed March 24, 2016.*


JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.


**OPINION**

¶ 1    The defendant, Fred Clark, was charged with multiple offenses, including aggravated vehicular hijacking while armed with a firearm (720 ILCS 5/18-4(a)(4) (West 2010)) and armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)). Following a bench trial, the circuit court of Cook County acknowledged that defendant committed the charged offenses while armed with a gun; however, the court determined that the gun "was used as a bludgeon and will be treated as such." Commensurate with the court's apparent belief that the manner of the firearm's use was relevant to the charged offenses, the court pronounced oral findings that defendant was "guilty of aggravated vehicular hijacking and armed robbery *without a firearm*" (emphasis added), uncharged

offenses identified in different subsections of the pertinent statutes. See 720 ILCS 5/18-4(a)(3) (West 2010) (aggravated vehicular hijacking, while armed with a dangerous weapon "other than" a firearm); 720 ILCS 5/18-2(a)(1) (West 2010) (armed robbery, while armed with a dangerous weapon "other than" a firearm). On appeal, the appellate court concluded those uncharged offenses were not lesser-included offenses of the charged firearm offenses, and thus those convictions were improper. The court found the issue forfeited, but held it cognizable as second-prong plain error. Pursuant to those findings, the appellate court reduced the convictions to vehicular hijacking and robbery, respectively, and remanded for resentencing on those convictions. 2014 IL App (1st) 123494. We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), and now affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        Defendant was initially charged by indictment in the circuit court of Cook County with aggravated vehicular hijacking while armed with a firearm (720 ILCS 5/18-4(a)(4) (West 2010)), armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)), two counts of burglary (entry of a building and entry of a motor vehicle with the intent to commit a theft) (720 ILCS 5/19-1(a) (West 2010)), aggravated battery (720 ILCS 5/12-4(b)(1) (West 2010)), aggravated unlawful restraint (720 ILCS 5/10-3.1 (West 2010)), and six counts of aggravated unlawful use of a weapon (all counts specifying a firearm) (720 ILCS 5/24-1.6(a)(1)(3)(A), (a)(1)(3)(C), (a)(1)(3)(I) (West 2010)). As relevant to an argument posited by the State, and discussed hereafter, we note that the aggravated battery charge stated in pertinent part that defendant caused bodily harm to Tyronn Wise "while using a dangerous weapon other than by the discharge of a firearm, to wit: struck Tyronn Wise about the body *with a firearm*." (Emphasis added.) The aggravated unlawful restraint charge similarly stated that defendant committed the offense "while using a deadly weapon, to wit: *a firearm*." (Emphasis added.)

¶ 4        Prior to defendant's jury waiver and ensuing bench trial, the trial court admonished defendant that he was charged with aggravated vehicular hijacking while armed with a firearm, and armed robbery while armed with a firearm; Class X felonies, with potential sentences upon conviction of 21 to 45 years' imprisonment. The trial court did not reference any other charges or penalties.

¶ 5    At defendant's bench trial, Tyronn Wise testified that on May 15, 2011, around 6:30 a.m., he was accosted by defendant and another man while he was parking his vehicle, a Dodge Charger, in his garage. He stated that defendant put a gun to his temple and ordered him to "give that shit up." The other individual was not armed. The offenders took a cell phone and cash from Wise's person. The other man then went through Wise's vehicle while defendant continued holding Wise at gunpoint. While the other man rifled through Wise's vehicle, defendant ordered Wise to the back of the garage and ordered him to kneel, "execution style," facing the wall, with his hands behind his head. Wise testified that defendant continued to hold the gun: "upside my head," "in the back of my head." Eventually, the other man drove off in Wise's vehicle. Before defendant departed in a separate vehicle, he told Wise he should kill him, and he then struck Wise twice in the head with the gun. Wise later identified defendant in a lineup and in open court. He also identified People's exhibit No. 6 as a photograph of the firearm defendant held "upside my head." He affirmed that gun was "at his person" during the entire 15-minute encounter.

¶ 6    Officer Rangel[1] of the Chicago police department testified he and his partner were on patrol on May 15, 2011, around 11 p.m., when they stopped a vehicle for a traffic violation. The occupants immediately fled on foot. Rangel pursued one person, who was ultimately apprehended. Rangel identified that individual as the defendant. A handgun was recovered from the vehicle. Rangel identified People's exhibit Nos. 3 and 4 as photographs depicting the Dodge Charger he stopped on May 15, 2011.

¶ 7    Officer Juan Aguirre, an evidence technician, testified that he recovered a gun from behind the front seat of the Dodge Charger. The gun, pictured in, among other exhibits, People's exhibit No. 6, was a loaded 9-millimeter Ruger handgun.

¶ 8    After Aguirre's testimony, the State rested. The defendant's motion for directed verdict was denied.

¶ 9    The defense first called Detective Sharon Walker. Walker testified that defendant and Kamari Belmont were arrested in connection with this case. Both appeared in a lineup on May 16, 2011. Wise viewed that lineup and identified defendant as the man who held a gun to his head. Wise did not identify Belmont.

---

[1]The record does not disclose the officer's first name.

¶ 10    Defendant then testified in his own behalf. Defendant stated that, on May 15, 2011, Belmont and Belmont's cousin picked him up in a red Dodge Charger, which Belmont said belonged to his aunt. Defendant said he did not see a gun in the car. Defendant stated that he eventually drove, as Belmont's cousin appeared to be intoxicated.

¶ 11    According to defendant, he drove to a gas station near 55th Street and Wells Street. He exited the car and saw someone in black with something in his hand. Defendant stated he thought that person might have had a gun, so he ran behind a nearby house. Defendant said, when he walked back to the front of the house, he encountered the police, who arrested him.

¶ 12    Defendant testified he had never seen Wise before trial. He denied holding a gun to Wise's head or taking anything from him. Defendant acknowledged that he was, at the time of trial, in custody for a juvenile parole violation. He was on parole for a controlled substance offense.

¶ 13    In argument before the court, the issues addressed by both sides were whether defendant was proven to be the individual who held "the gun" to Wise's head and whether "the gun" subsequently found in the Dodge Charger when defendant was arrested was adequately tied to defendant. Wise's testimony that defendant held a gun to his head and thereafter pistol-whipped him stood uncontradicted. Defense counsel never argued that the weapon employed was anything other than a firearm. He asked that the trial court find defendant not guilty of all charges.

¶ 14    The trial court found that Wise was credible, and defendant was not. The court recounted Wise's testimony, that defendant was "the person that robbed him as he was trying to pull into his garage. He came into his garage with another person, put a gun to his head, ordered him to do various things, smacked him with a pistol that was in his hand, then fled. *** Later the same day Mr. Clark was seen driving the victim's car, and a gun was recovered in the car."

¶ 15    The court concluded:

    "I do believe he was properly identified as the person involved in this case. The weapon was used in this case in the manner of a bludgeon. He was pistol-whipped with it.

    I find under all circumstances that it was used as a bludgeon and will be treated as such. So he is found guilty of aggravated vehicular hijacking and

- 4 -

armed robbery without a firearm, also the other charges, the burglary charges as well."

¶ 16    Neither the State, nor defense counsel, objected to the court's findings when announced, and defendant's motion for a new trial subsequently raised only generic, boilerplate contentions that were insufficient to bring the error subsequently claimed on appeal to the attention of the circuit court.

¶ 17    At the hearing on defendant's motion and sentencing, the court stated that it had found defendant "guilty of armed robbery on [*sic*] a firearm, and aggravated vehicular hijacking, and burglary." Defense counsel chose to stand on his posttrial motion, which was "respectfully denied." In the course of defense counsel's sentencing argument, counsel took issue with the court's finding that defendant had "pistol-whipped" the victim. In response, the court recharacterized: "Smacked him in the head with a gun."

¶ 18    In announcing defendant's sentences, the court first noted that defendant had been in trouble "a number of times," had had multiple "encounters with the police," and "was on parole at the time of this offense." The court then shed some light on the thought process that led to its finding on these uncharged offenses, which carried a lower penalty range than those with which defendant *was* charged:

> "This offense did involve some amount of premeditation, and it was violent, and an actual gun was recovered later. I[,] already in light of his age, the fact the gun wasn't fired, other circumstances that I heard at the trial, gave some deference and benefit of the doubt and justice as to the ultimate finding."

It appears the presentence report thereafter prompted the judge to rethink the "benefit" and "justice" conferred upon defendant. The court continued:

> "That being said, now that I see the Pre-sentence Investigation, I hear more about it, I agree this is a serious matter. He's got a violent side to him, particularly again the fact he's on parole at the time of this offense is disturbing.
>
> As to the offenses of armed robbery and aggravated vehicular hijacking, it's 17 years in the penitentiary; as to the burglary, 7 years in the penitentiary. All sentences will run concurrently."

The court's written order of commitment and sentence recites those sentences, but reflects convictions for the firearm offenses as charged.

¶ 19    On appeal, the appellate court first considered whether the trial court had acquitted defendant of the charged offenses of aggravated vehicular hijacking with a firearm and armed robbery with a firearm. In the course of addressing that issue, the court examined state and federal authority. The appellate court cited *People v. Rey*, 136 Ill. App. 3d 645 (1985) for the proposition that the Illinois Constitution bars an appeal from a judgment of acquittal " 'regardless of whether the court's ruling [was] based upon a mistake of fact or mistake of law.' " 2014 IL App (1st) 123494, ¶ 20 (quoting *Rey*, 136 Ill. App. 3d at 651). Quoting this court, the appellate court noted that a judgment constitutes an acquittal where it " 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' " *Id.* (quoting *People v. Williams*, 188 Ill. 2d 293, 300 (1999)). The appellate court also cited the United States Supreme Court's decision in *Evans v. Michigan*, 568 U.S. ___, ___, 133 S. Ct. 1069, 1075-76 (2013), wherein the Supreme Court stated, " 'an acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was correct or not, [citation], and regardless of whether the court's decision flowed from an incorrect antecedent ruling of law.' " 2014 IL App (1st) 123494, ¶ 20 (quoting *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075-76).

¶ 20    In this case, the appellate court concluded that the trial court's guilty findings on the uncharged offenses of aggravated vehicular hijacking and armed robbery *without* a firearm constituted acquittals of the charged firearm offenses. *Id.* ¶ 21. The court acknowledged a conflict between the trial court's oral pronouncement—finding defendant guilty of aggravated vehicular hijacking and armed robbery *without* a firearm—and the court's written order of commitment and sentence, which reflected convictions for aggravated vehicular hijacking with a firearm and armed robbery *with* a firearm. The court observed that the 17-year sentences imposed by the trial court were consistent with the court's oral pronouncement. Quoting *People v. Roberson*, 401 Ill. App. 3d 758, 774 (2010), the court held that when the oral pronouncement of the court and the written pronouncement conflict, the oral pronouncement controls. 2014 IL App (1st) 123494, ¶ 21. In this respect, the appellate court concluded:

"As the trial court's oral pronouncements reflect a resolution of the factual elements of aggravated vehicular hijacking with a firearm and armed robbery with a firearm in defendant's favor, as well as an express rationale for it, it is clear that the trial court acquitted defendant of those offenses. We may not

- 6 -

review the trial court's judgment of acquittal, even if the judgment resulted from a mistake of fact or law." *Id.*

¶ 21    The appellate court then turned to the question of whether the offenses of aggravated vehicular hijacking with a dangerous weapon other than a firearm and armed robbery with a dangerous weapon other than a firearm were lesser-included offenses of the charged firearm offenses. Applying the charging instrument approach, the appellate court determined they were not.

¶ 22    En route to that conclusion, the court first, pursuant to our direction in *People v. Kolton*, 219 Ill. 2d 353, 361 (2006), considered whether the description of the charged offenses in the charging instrument—here the charged firearm offenses— contained the broad foundation or main outline of the uncharged offenses. 2014 IL App (1st) 123494, ¶¶ 25-26. In the course of that inquiry, the court noted that the aggravated vehicular hijacking statute and the armed robbery statute provide for differing charging variants that entail differing penalties upon conviction. In each, there is a subsection specifying commission of the offense while "armed with a dangerous weapon other than a firearm" (720 ILCS 5/18-2(a)(1), 18-4(a)(3) (West 2010)), and another referencing commission of the offense while "armed with a firearm" (720 ILCS 5/18-2(a)(2), 18-4(a)(4) (West 2010)). 2014 IL App (1st) 123494, ¶ 27. Although all variants of the offenses are classified as Class X felonies, the legislature has determined that an additional 15 years shall be added to the term of imprisonment when the offense is committed while "armed with a firearm." 720 ILCS 5/18-2(b), 18-4(b) (West 2010). The appellate court observed that the charges here consistently alleged that defendant committed the offenses while "armed with a firearm." "The State did not charge defendant with aggravated vehicular hijacking or armed robbery with a dangerous weapon other than a firearm pursuant to section 18-2(a)(1) or 18-4(a)(3)." 2014 IL App (1st) 123494, ¶ 28.

¶ 23    The court considered whether an allegation that defendant was armed with a dangerous weapon *other than* a firearm could be inferred from charges that defendant *was* armed with a firearm. *Id.* ¶ 29. Consistent with decisions in *People v. Barnett*, 2011 IL App (3d) 090721, and *People v. McBride*, 2012 IL App (1st) 100375, the appellate court determined it could not. The plain language of the statutory provisions in question rendered them " 'mutually exclusive of each other.' " 2014 IL App (1st) 123494, ¶ 30 (quoting *Barnett*, 2011 IL App (3d) 090721, ¶ 38). In other words, a weapon cannot at once be a "firearm" and something "other than a firearm." The appellate court found this court's decision in

- 7 -

*People v. Washington*, 2012 IL 107993, inapposite, as it involved an earlier version of the armed robbery statute, which did not distinguish between firearms and dangerous weapons other than firearms; it simply required the State to prove that the defendant was armed with "a dangerous weapon." 2014 IL App (1st) 123494, ¶ 33.

¶ 24 Having concluded that aggravated vehicular hijacking with a dangerous weapon other than a firearm and armed robbery with a dangerous weapon other than a firearm were not lesser-included offenses of aggravated vehicular hijacking with a firearm and armed robbery with a firearm (*id.* ¶ 32), and that the trial court therefore erred in convicting defendant of those uncharged offenses (*id.* ¶ 34), the appellate court went on to consider whether that error constituted second-prong plain error, *i.e.*, " 'a clear or obvious error *** so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " (Internal quotation marks omitted.) *Id.* ¶ 36 (quoting *People v. Thompson*, 238 Ill. 2d 598, 613 (2010)).

¶ 25 The appellate court rejected the State's contention that this court has limited second-prong plain error to six categories of error synonymous with structural errors identified by the United States Supreme Court, noting that although our decisions in *People v. Glasper*, 234 Ill. 2d 173 (2009), and *Thompson* equated second-prong plain error to structural error, we did not restrict plain error to the six types of plain error recognized by the United States Supreme Court. 2014 IL App (1st) 123494, ¶ 40. The appellate court observed that this court has in fact applied second-prong plain error in other contexts, holding, in *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009), that the failure to apply the one-act, one-crime rule constituted second-prong plain error, and in *People v. Walker*, 232 Ill. 2d 113, 131 (2009), that the failure to exercise discretion in denying a request for a continuance constituted second-prong plain error, given the egregious facts of that case. 2014 IL App (1st) 123494, ¶ 40.

¶ 26 The appellate court held that second-prong plain error applies to these facts, essentially marrying the principle that convicting a defendant of an uncharged offense that is not a lesser-included offense of a charged offense violates a defendant's " 'fundamental due process right to notice of the charges brought against him' " (*id.* ¶ 41 (quoting *Kolton*, 219 Ill. 2d at 359-60)) with the appellate court's understanding of our holding in *Samantha V.*: "[P]ermitting unauthorized convictions to stand challenges the integrity of the judicial process." *Id.* ¶ 42. In so

holding, the appellate court acknowledged the State's argument that it is " 'disingenuous' " for defendant to assert that his convictions erode the integrity of the judicial process because the trial court, despite finding that defendant was armed with a firearm, " 'went out of its way *** to conclude that it would "treat" the firearm as a bludgeon' " in an " 'attempt to shield defendant from the mandatory additional fifteen-term [*sic*] of imprisonment.' " *Id.* (quoting the State's argument).[2] The appellate court "recognize[d] that the trial court intended to afford defendant 'some deference and benefit of the doubt and justice' by acquitting him of the charged offenses," but the appellate court nonetheless determined that the convictions for the uncharged offenses violated defendant's fundamental right to due process and were remediable via plain error. *Id.* (quoting the trial court). The appellate court concluded that the offenses of vehicular hijacking (720 ILCS 5/18-3 (West 2010)) and robbery (720 ILCS 5/18-1(a) (West 2010)) *would* be lesser-included offenses of the charged offenses, and the evidence at trial supported convictions for those lesser offenses; therefore, the appellate court exercised its authority under Illinois Supreme Court Rule 615(b)(3) to reduce the degree of defendant's conviction to those lesser, uncharged, offenses. 2014 IL App (1st) 123494, ¶ 43 (quoting *People v. Kennebrew*, 2013 IL 113998, ¶ 25, and citing Ill. S. Ct. R. 615(b)(3)). The court vacated the convictions for aggravated vehicular hijacking with a dangerous weapon other than a firearm and armed robbery with a dangerous weapon other than a firearm, and remanded for resentencing on vehicular hijacking and armed robbery convictions. *Id.* ¶ 45.

¶ 27    In a footnote, the appellate court agreed with the *Barnett* court's observation that the State could have avoided this result had it separately charged defendant with aggravated vehicular hijacking pursuant to section 18-4(a)(3) and armed robbery pursuant to section 18-2(a)(1)—alleging that he committed the offenses with a dangerous weapon *other than* a firearm. *Id.* ¶ 42 n.2. The clear suggestion is that the State should have charged defendant with an offense for which it had no proof—there was no evidence that defendant used something *other than* a firearm—in order to provide the trial court in this case the option of finding defendant guilty of a *charged* offense he did not in fact commit, but one that carries a lesser penalty.

---

[2]We note that the same judge, in *People v. Funches*, 2015 IL App (1st) 131591-U, where defendant was charged with armed robbery while armed with a firearm along with other firearm offenses, found that defendant guilty of armed robbery with a dangerous weapon *other than* a firearm, yet also found him guilty of offenses *requiring* the possession of a firearm.

ANALYSIS

¶ 29         Before this court, the State argues that: (1) "the appellate court misapplied the charging instrument approach when it held that aggravated vehicular hijacking (with a dangerous weapon other than a firearm) and armed robbery (with a dangerous weapon other than a firearm) cannot be lesser-included offenses of aggravated vehicular hijacking (with a firearm) and armed robbery (with a firearm)"; and (2) "the appellate court erred in holding that any error by the trial court in finding defendant guilty of the lesser offenses constituted second-prong plain error under Supreme Court Rule 615(a)." The defendant addresses those contentions and argues, alternatively, that even if the circuit court's error does not constitute second-prong plain error, relief is required because trial counsel was ineffective for failing to object to the entry of two improper convictions. We begin with the first issue.

¶ 30         A defendant in a criminal prosecution has a fundamental due process right to notice of the charges against him; thus, a defendant may not be convicted of an offense he has not been charged with committing. *Kennebrew*, 2013 IL 113998, ¶ 27; *Kolton*, 219 Ill. 2d at 359. However, a defendant may be convicted of an uncharged offense if it is a lesser-included offense of a crime expressly charged in the charging instrument, and the evidence adduced at trial rationally supports a conviction on the lesser-included offense and an acquittal on the greater offense. *Kennebrew*, 2013 IL 113998, ¶ 27; *Kolton*, 219 Ill. 2d at 360; *People v. Baldwin*, 199 Ill. 2d 1, 6 (2002); *People v. Novak*, 163 Ill. 2d 93, 105, 108 (1994).

¶ 31         We apply the "charging instrument approach" when determining whether an uncharged offense is a lesser-included offense of a charged offense. *Kennebrew*, 2013 IL 113998, ¶ 32; *Kolton*, 219 Ill. 2d at 362-63. Under the charging instrument approach, the lesser offense need not be a necessary part of the greater offense, but the facts alleged in the charging instrument must contain a broad foundation or main outline of the lesser offense. *Kennebrew*, 2013 IL 113998, ¶ 30; *Kolton*, 219 Ill. 2d at 361; *Novak*, 163 Ill. 2d at 107. The charging instrument need not explicitly state all of the elements of the lesser offense as long as any missing elements can be reasonably inferred from the allegations included. *Kennebrew*, 2013 IL 113998, ¶ 30; *People v. Miller*, 238 Ill. 2d 161, 166-67 (2010). Under the charging instrument approach, whether a particular offense is "lesser included" is a decision

which must be made on a "case-by-case basis" using the factual description of the charged offense in the indictment. *Kolton*, 219 Ill. 2d at 367.

¶ 32 Thus, we first consider whether armed robbery charged via the provisions of section 18-2(a)(1) of the Criminal Code of 1961 is a lesser-included offense of armed robbery charged pursuant to section 18-2(a)(2), and whether aggravated vehicular hijacking charged pursuant to the provisions of section 18-4(a)(3) is a lesser-included offense of aggravated vehicular hijacking charged under section 18-4(a)(4). Whether an offense is a lesser-included offense of a charged offense is an issue of law that we review *de novo*. *Kennebrew*, 2013 IL 113998, ¶ 18; *Kolton*, 219 Ill. 2d at 361. Following is an overview of the statutory schemes in question.

¶ 33 Section 18-2(a) of the Code (720 ILCS 5/18-2(a) (West 2010)) provides in pertinent part:

> "(a) A person commits armed robbery when he or she violates Section 18-1; and
>
>> (1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm; or
>>
>> (2) he or she carries on or about his or her person or is otherwise armed with a firearm; or
>>
>> (3) he or she, during the commission of the offense, personally discharges a firearm; or
>>
>> (4) he or she, during the commission of the offense, personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person."

Pursuant to subsection (b) of the statute, a violation of any of the foregoing provisions would be a Class X felony, with violations of subsections (a)(2) through (a)(4) carrying sentencing add-ons of 15, 20, and 25 years to life, respectively. 720 ILCS 5/18-2(b) (West 2010).

¶ 34 Section 18-4(a) of the Code (720 ILCS 5/18-4(a) (West 2010)) provides in pertinent part:

> "(a) A person commits aggravated vehicular hijacking when he or she violates Section 18-3; and

(1) the person from whose immediate presence the motor vehicle is taken is a physically handicapped person or a person 60 years of age or over; or

(2) a person under 16 years of age is a passenger in the motor vehicle at the time of the offense; or

(3) he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm; or

(4) he or she carries on or about his or her person or is otherwise armed with a firearm; or

(5) he or she, during the commission of the offense, personally discharges a firearm; or

(6) he or she, during the commission of the offense, personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person."

Violations of this statute are classified as Class X felonies, with a violation of subsection (a)(3) requiring at least a seven-year sentence, and violations of (a)(4) to (a)(6) sentencing add-ons of 15, 20, and 25 years to life, respectively. 720 ILCS 5/18-4(b) (West 2010).

¶ 35    The legislature has defined an "included offense" to mean "an offense which"

"(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein." 720 ILCS 5/2-9 (West 2010).

¶ 36    We note that while some of the offenses identified in sections 18-2(a) and 18-4(a) appear to inclusively build upon others, not all exhibit that relationship. Certainly, subsections (a)(3) and (a)(4) of section 18-2 have that relationship to subsection (a)(2) of that section, as is the case as well with subsections (a)(5) and (a)(6) of section 18-4 with subsection (a)(4) of *that* section. In each instance, the base offense requires commission of the crime while "armed with a firearm." 720 ILCS 5/18-2(a)(2), 18-4(a)(4) (West 2010). Subsequent subsections build upon that

- 12 -

lesser, base offense by adding, first, the element that the perpetrator "personally discharges a firearm" (720 ILCS 5/18-2(a)(3), 18-4(a)(5) (West 2010)), and then another element, that the discharge of the firearm "proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person" (720 ILCS 5/18-2(a)(4), 18-4(a)(6) (West 2010)).

¶ 37     However, other offenses identified in the two statutory schemes have no apparent relationship to offenses committed with a firearm. For example, the fact, or allegation, that "the person from whose immediate presence [a] motor vehicle is taken is a physically handicapped person or a person 60 years of age or over" (720 ILCS 5/18-4(a)(1) (West 2010)) bears no necessary relationship to the fact that a firearm was used in the commission of the offense (see 720 ILCS 5/18-4(a)(4) (West 2010)), nor does one allegation apprise the accused, explicitly or inferentially, that he will be facing charges involving the other. The same can be said with respect to the charge that a vehicular hijacking was committed when "a person under 16 years of age [was] a passenger in the motor vehicle at the time of the offense." 720 ILCS 5/18-4(a)(2) (West 2010).

¶ 38     More to the point for present purposes, we would have to stretch plain meaning and common understanding beyond a semblance of reason to conclude that a charge that a defendant committed an offense while "armed with a firearm" puts that defendant on notice, explicitly or inferentially, that he may be prosecuted for, and convicted of, an uncharged offense committed "with a dangerous weapon, *other than* a firearm." (Emphasis added.) Compare 720 ILCS 5/18-2(a)(2), 18-4(a)(4) (West 2010), with 720 ILCS 5/18-2(a)(1), 18-4(a)(3) (West 2010). In this case, unlike the other subsections discussed, the language of sections 18-2(a)(1) and 18-4(a)(3) *explicitly excludes* the use of a firearm. We agree with the appellate panel below, and those in *Barnett* and *McBride*: the plain language of these statutes indicates that violations are " 'mutually exclusive of each other.' " 2014 IL App (1st) 123494, ¶¶ 30-32 (quoting *Barnett*, 2011 IL App (3d) 090721, ¶ 38); *McBride*, 2012 IL App (1st) 100375, ¶ 24. The charging instrument in this case, describing, without exception, the possession of a firearm during the commission of the offenses, cannot be construed so "broadly" as to include the possession of a weapon that is something "other than a firearm." We conclude that the offenses of aggravated vehicular hijacking and armed robbery *without* a firearm are not, given the circumstances of this case, lesser-included offenses of aggravated vehicular hijacking and armed robbery *with* a firearm. Therefore, the trial court erred in convicting defendant of the former.

- 13 -

¶ 39 We note in passing, even if we *had* found otherwise with respect to lesser-included status, it would still have been error to convict the defendant of offenses set forth in sections 18-2(a)(1) and 18-4(a)(3). In order to convict a defendant of an uncharged offense, the evidence adduced at trial must rationally support a conviction on the lesser-included offense and an acquittal on the greater offense. *Kennebrew*, 2013 IL 113998, ¶ 27; *Kolton*, 219 Ill. 2d at 360; *Baldwin*, 199 Ill. 2d at 6; *Novak*, 163 Ill. 2d at 105, 108. Neither is the case here—which brings us to the matter of acquittal.

¶ 40 The evidence overwhelmingly supported convictions on the charged firearm offenses. Initially, the court denied defendant's motion for directed verdict at the conclusion of the State's case, thus indicating that the State's evidence was sufficient to support convictions for those offenses. See *People v. Hendricks*, 137 Ill. 2d 31, 63 (1990) (standard is whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence most strongly in the State's favor). At the conclusion of all the evidence, the State's evidence that a firearm was used in the commission of the offenses stood uncontroverted. Defendant simply denied ever seeing the victim before the trial, and he proffered an explanation for his presence in the victim's vehicle, in which the gun was found. The trial court resolved any question of credibility in favor of the State and against the defendant. The trial judge in his own remarks repeatedly referred to the presence of "a gun" and "pistolwhipping." Whether the trial court's finding of guilt on the uncharged offenses—implicitly acquitting defendant, *sub silentio*, of the charged offenses requiring possession of a firearm—was arrived at under the misapprehension that the manner of the gun's use mattered, or the judge was simply giving the defendant a break notwithstanding the evidence—as the appellate court seemed on the verge of suggesting (2014 IL App (1st) 123494, ¶ 42)—the result is the same. We have reviewed the authorities cited by the appellate court (see *id.* ¶ 20) and agree that the trial court's judgment, whether premised upon a mistake of law, a mistake of fact, or outright beneficence, amounts to an unassailable acquittal of the charged firearm offenses. The State has now abandoned any argument otherwise.

¶ 41 Although defendant argues that trial counsel was ineffective for failing to challenge the guilty findings that *were* entered by the trial court, we need not further consider whether counsel's representation was deficient or whether defendant was prejudiced thereby, because, ultimately, we conclude that the trial court's error is cognizable and remediable as plain error.

¶ 42    Illinois Supreme Court Rule 615(a) provides as follows:

> "(a) Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the trial court." (Emphasis added.) Ill. S. Ct. R. 615(a).

The plain error doctrine is applicable when: " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d at 613 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). As the language of the rule indicates, remedial application of the plain error doctrine is discretionary. *People v. Walker*, 109 Ill. 2d 484, 497 (1985); *People v. Holman*, 103 Ill. 2d 133, 176-77 (1984). Second-prong plain error is at issue here.

¶ 43    As we have observed, the plain language of sections 18-2(a)(1) and 18-4(a)(3) of the Code *explicitly excludes* the possession or use of a firearm. Thus, violations of sections 18-2(a)(2) and 18-4(a)(4)—offenses committed with firearms—and sections 18-2(a)(1) and 18-4(a)(3)—offenses committed with weapons other than firearms—are mutually exclusive of each other. That would seem self-evident from the language employed in the statutory scheme, as amended.[3] So, there is, in our view, clear error.

¶ 44    The next question is whether that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. Here, we find ourselves in peculiar territory. Looking at it one way, defendant got more than he deserved: the evidence overwhelmingly indicated he was armed with a firearm when he committed the offenses; both the charged offenses, and the uncharged offenses for which the trial court entered guilty findings, were Class X felonies in

---

[3]As we noted in *People v. Washington*, 2012 IL 107993, ¶ 6, Public Act 91-404, effective January 1, 2000, altered the prior statutory scheme by creating distinct offenses based on whether the offenses were committed with a dangerous weapon "other than a firearm" or committed "with a firearm." For offenses committed with a "firearm," sentencing enhancements were created, commonly referred to as the 15-20-25-to-life sentencing provisions, which the court was required to impose based on whether a firearm was in the offender's possession, discharged, or used to cause bodily harm.

any event; and the only difference was defendant was subjected to a *lower* range of penalties because of the trial court's actions.[4] In that sense, defendant benefitted from the error. However, defendant was not charged with armed robbery and aggravated vehicular hijacking with a dangerous weapon other than a firearm, and the evidence did not support findings of guilt on those offenses. To allow those convictions and sentences to stand would seem to suggest that we condone a kind of mix-and-match, *ad hoc* justice, where the specific convictions of record do not matter. In that respect, in considering whether the discretionary exercise of remedial plain error is appropriate in this case, we have to account for and preserve "the integrity of the judicial process."

¶ 45    We, like the appellate court, "recognize that the trial court intended to afford defendant 'some deference and benefit of the doubt and justice' by acquitting him of the charged offenses" (2014 IL App (1st) 123494, ¶ 42 (quoting the trial court)); however, the result of the trial court's action is that defendant stands convicted of offenses he was not charged with and he did not commit. There is no question that he committed armed robbery and vehicular hijacking, but he did not possess "a dangerous weapon other than a firearm" when he committed those offenses. In applying second-prong plain error here, the appellate court, respectively, cited and tacitly referenced our decision in *Samantha V.* for two propositions: (1) this court has held that second-prong plain error applies to errors other than the six types of structural error that have been recognized by the United States Supreme Court (*id.* ¶ 40) and (2) we have recognized that permitting unauthorized convictions to stand challenges the integrity of the judicial process (*id.* ¶ 42). The decision in *Samantha V.*, of course, did not announce any new rule of law. As this court noted therein, it was already "well established that a one-act, one-crime violation affects the integrity of the judicial process, thus satisfying the second prong of the plain-error test." *Samantha V.*, 234 Ill. 2d at 378-79 (citing *People v. Harvey*, 211 Ill. 2d 368, 389 (2004), and *People v. Artis*, 232 Ill. 2d 156, 167-68 (2009)).

---

[4]The rationale for the trial court's findings on the uncharged offenses appears to be unrelated to the pertinent statutory criteria. We recognize that mistakes of law are inevitable. Beyond that, we would note that the General Assembly is free to enact any legislation that the constitution does not expressly prohibit. *Maddux v. Blagojevich*, 233 Ill. 2d 508, 522 (2009). This court has upheld the constitutionality of firearm enhancements enacted by the legislature. See *People v. Sharpe*, 216 Ill. 2d 481 (2005). "The question as to whether or not a better law might have been enacted is for the legislature and not for the courts, and criticisms against the wisdom, policy or practicability of a law are subjects for legislative consideration and not for the courts." (Internal quotation marks omitted.) *People v. Howard*, 228 Ill. 2d 428, 438 (2008).

- 16 -

¶ 46        As the appellate court observed in this case, although our decisions in *Glasper* and *Thompson* equated second-prong plain error with structural error, we did not restrict plain error to the six types of structural error that have been recognized by the Supreme Court. 2014 IL App (1st) 123494, ¶ 40. We certainly did not overrule *Samantha V.*, *Artis*, and *Harvey.* The concern that drove those decisions was articulated in *Artis*, where no sentence was even imposed on the improper conviction:

> " '[T]he effects of the improper conviction are not confined to this trial and sentence. Defendant may be subject to future prejudice as a result of the improper conviction[ ]. In the unfortunate event of a future encounter with the criminal justice system, the improper conviction could likely affect decisions with respect to the setting of bond and sentencing, as well as parole opportunities. This is so regardless of whether an improper sentence has also been imposed.' " *Artis*, 232 Ill. 2d at 166-67 (quoting *People v. Davis*, 156 Ill. 2d 149, 160 (1993)).

¶ 47        Here, though defendant has been acquitted of the charged firearm offenses, which the evidence indicates he committed, he stands convicted of and sentenced for uncharged offenses he did not commit. The quandary we face is whether we should penalize him for the acquittal by allowing the improper convictions and sentences to stand, or rectify the improper convictions and sentences via remedial application of plain error. We agree with the appellate court—the latter. Two principles underpin that determination, both of which appear to have figured into the appellate court's decision as well: (1) convicting a defendant of an uncharged offense that is not a lesser-included offense of a charged offense violates a defendant's " 'fundamental due process right to notice of the charges brought against him' " (2014 IL App (1st) 123494, ¶ 41 (quoting *Kolton*, 219 Ill. 2d at 359-60)) and (2) an unauthorized conviction challenges the integrity of the judicial process, and should not stand (*id.* ¶ 42). A defendant should have fair notice of the charges he will be called upon to defend, and any conviction ultimately entered should be based upon the evidence, not judicial fiat.

¶ 48        As we observed in *Kennebrew*, it is within a court of review's authority to utilize Rule 615(b)(3) to reduce the degree of a defendant's conviction, even when a lesser offense is not charged, so long as the offense is a lesser-included offense of the crime expressly charged. *Kennebrew*, 2013 IL 113998, ¶¶ 25, 47; Ill. S. Ct. R. 615(b)(3). The elements of the lesser offenses of vehicular hijacking and robbery

- 17 -

are set forth in the greater offenses charged in counts I and II of the indictment, and the evidence at trial supported convictions for those offenses. See 720 ILCS 5/18-3, 18-1(a) (West 2010). Therefore, under the circumstances, the appellate court properly reduced the degree of defendant's convictions to vehicular hijacking and robbery and remanded for resentencing.

¶ 49    For the foregoing reasons, we affirm the judgment of the appellate court.

¶ 50    Affirmed.